IMPERIAL SUGAR CO. v. CABELL et al.
(No. 6736.)

(Court of Civil Appeals of Texas. Galveston. July 1, 1915. Rehearing Denied Oct. 14, 1915.)

1. STATES ☞191 — ACTION AGAINST — SUIT AGAINST AGENTS.

That defendants in trespass to try title are claiming possession as agents for the state will not defeat the right to maintain the action by one who has shown title and right of possession, on the ground that suit is brought without the state's consent; the only necessary party being, under Rev. St. 1911, arts. 7737, 7738, the person in possession.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. ☞191.]

2. DEEDS ☞165 — CONDITION — EFFECT OF BREACH.

Where a vendor sold certain land to the board of penitentiary commissioners under a deed expressly retaining a vendor's lien to insure the vendees' obligation to make payment and to raise and sell to the vendor a certain amount of sugar cane for 10 years, and reciting that the deed should become absolute upon final payment and performance of the vendees' obligations, but the vendees failed to comply with their contract and repudiated its obligations, the vendor's title remained unimpaired, and he was entitled to possession of the premises.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 521; Dec. Dig. ☞165.]

3. DEEDS ☞147—CONDITIONS—VALIDITY.

A deed of land provided that the superior title should remain in the vendor, and pass to the vendee only upon the condition that the contract be fully performed, is not rendered ineffectual because the consideration for the contract was partly the sale of personal property, since a conveyance may be made conditional upon the performance of any lawful contract.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 473–477; Dec. Dig. ☞147.]

4. DEEDS ☞145—CONSTRUCTION—CONDITIONS—COVENANTS.

Where a deed of land was made conditional upon the performance of a contract whereby the vendees were to cultivate a certain part of the land in sugar cane for 10 years and sell the cane to the vendor, such agreement was a condition, the breach of which would prevent title from vesting in the vendees, and not a covenant, though such in form.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 471; Dec. Dig. ☞145.]

5. VENDOR AND PURCHASER ☞296—REMEDIES OF VENDOR—LIEN.

A vendor, who has reserved an express vendor's lien to secure the consideration for a conveyance, may, on default by the vendee, rescind the contract and recover the land in trespass to try title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 832; Dec. Dig. ☞296.]

6. VENDOR AND PURCHASER ☞267—REMEDIES OF VENDOR—LIEN—RELEASE.

A vendor sold land and retained a vendor's lien to secure the payment of the consideration and the performance of an agreement whereby the vendees were to raise a certain amount of sugar cane and sell it to the vendor for a period of 10 years. On payment of the money consideration agreed upon, the vendor executed a release of his lien, which provided that the cane contract should continue in full force and effect and that the release should not be construed as a cancellation thereof. Held, that reference was made to the cane contract in its entirety, and therefore did not release the reservation of title for its performance, since, although a release concludes with general words, it will be construed to relate to the particular matter recited, which the parties intended to release.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. ☞267.]

7. VENDOR AND PURCHASER ⬡266—REMEDIES OF VENDOR—LIEN—WAIVER.

Where a contract for the sale of land and the cultivation of cane for 10 years was secured by a vendor's lien, failure to assert the lien upon a partial breach of the contract was no waiver of future performance, and suit to recover the land was not required to be brought until the vendees' repudiation of the entire contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 687, 713–750; Dec. Dig. ⬡266.]

Appeal from District Court, Ft. Bend County; Samuel J. Styles, Judge.

Action by the Imperial Sugar Company against Ben E. Cabell and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Lane, Wolters & Storey and Wm. A. Vinson, all of Houston, Williams & Neethe, of Galveston, D. R. Peareson and Thos. B. Pearesen, both of Richmond, and Hill & Eakins, of Huntsville, for appellant. B. F. Looney, Atty. Gen., and G. B. Smedley and C. M. Cureton, Asst. Attys. Gen., for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by the appellant against Ben E. Cabell, L. W. Tittle, and R. W. Brahan to recover about 5,200 acres of land, known as the "Sartartia Plantation," in Ft. Bend county. The defendants, by plea in abatement, disclaimed any right, title, or interest in the land sued for as individuals, and alleged that they together constituted the board of prison commissioners of the state of Texas, and as such were holding the land in question for the state of Texas, and as officers of the state; that the fee-simple title to said land was in the state of Texas, and not in the defendants, or either of them; that, while the suit was brought against them, the effect of a judgment against them would be to divest the title to said land out of the state of Texas; that the suit was in fact against the state, and could not be maintained under the laws and Constitution of Texas. In their first amended original answer the defendants, both by exception and plea, raised substantially the same question. It was further specially alleged that the respective rights and contentions of the parties arose out of the following transaction, viz.: That on February 17, 1908, the Imperial Sugar Company executed and delivered to W. H. Gill, R. H. Hicks, and J. T. Mewshaw, the then board of penitentiary commissioners of Texas, a general warranty deed to the land in question, and also to a large amount of personal property therein described, for the use and benefit of the state of Texas; that as a part of the same transaction, although not contemporaneously executed, the said board of penitentiary commissioners executed and delivered to the Imperial Sugar Company a certain instrument in writing, the two instruments being executed, it was alleged, as the result of a verbal agreement and negotiations between the Imperial Sugar Company and the board of penitentiary commissioners.

The deed referred to in defendants' answer is a deed of general warranty executed by the appellant, and conveys to the persons last above named, composing the board of penitentiary commissioners, for the use and benefit of the state of Texas, the land in controversy, and also the following personal property:

"134 hogs, 139 work mules, 17 saddle horses, 80 tram cars, 75 sections of portable track, 49 cultivators, 16 disc cultivators, 115 turning plows, 6 disc plows, 35 sweep stocks, 7 stubble shavers, 5 stubble diggers, 8 middle bursters, 13 subsoilers, 6 cane scrapers, 12 cotton planters, 2 mowing machines, 30 hoes, 6 post hole diggers, 3 rice seeders, 12 shovels, 10 spades, 20 stubble hoes, 12 briar hooks, 30 axes, 6 scrapers, 6 pitchforks, a large number of double and single trees, 150 cane knives, 60 sets of plow gear, 17 cane wagons (secondhand), 10 cane wagons (new), 9 road wagons, 2 good graders, 1 corn crusher, about 20 dozen tract chains for unloading cane, 6 saddles for guards, 18 wagon saddles, and 3 complete derricks; about 1,000 bushels of ear corn, 2 large barns of crushed corn, about 50 tons of rice bran, about 200 bales of alfalfa and hay, 75 bushels of field peas, about 1,500 bushels of cotton seed for planting purposes; also one blacksmith and wheelwright shop and tools; also a large amount of repair material, such as clev lap links, etc., and such other similar personalty and chattels as were on hand and used in connection with the plantation, and all machinery improvements and buildings of every description then on the land."

Following the covenant of general warranty the deed contains the following:

"But it is expressly stipulated, agreed, and understood, by and between the parties hereto, that a vendor's lien and the superior title to all lands and personalty hereby conveyed is hereby retained and reserved by the company and granted by the board to secure full, complete, and prompt payment of the consideration herein agreed to be paid therefor, as is hereinafter fully set forth, and to fully insure the obligations herein assumed by the board [the vendee], and upon the full payment of the said consideration and performance of said obligations this deed shall become absolute. The consideration agreed to be paid for said land and personal property is the amount and upon the terms and conditions following, as is evidenced by the one certain obligation in writing, for the sum of one hundred and sixty thousand ($160,000.00) dollars, to bear interest from the —— day of January, 1908, at 6 per cent. per annum, interest payable annually, executed by said board in behalf of said penitentiary system, and duly approved by his excellency, T. M. Campbell, Governor of the state of Texas, of even date herewith, and made payable to the Imperial Sugar Company, or its order, at Houston, Harris county, Texas. The full purchase price of said land and personalty is one hundred and sixty thousand ($160,000.00) dollars, to be paid by said board causing to be delivered to the company, or its assigns or legal representatives, as is hereinafter provided, 40 per cent. gross of the annual crops of cane and cotton raised and grown upon the lands herein conveyed; the value of said per cent. of said products so delivered to the company is to be applied annually as a credit upon the obligations given for said purchase money, first discharging and paying all accrued interest and the balance to be applied to the reduction of such principal sums, and this method to continue until the full

amount thereof has been paid, when full release thereof shall be given. In connection with and as a part of this sale and purchase, the following covenants and agreements, by the company and the board, respectively, are made and entered into, and is a part of the consideration therefor."

Here follows a number of mutual agreements and covenants, among which are the following:

"(b) For the term of ten years, including the year A. D. 1908, the purchaser [the board] agrees and binds itself to sell and deliver the annual cane crop grown on the land hereby conveyed to Imperial Sugar Compnay or its successors or assigns, f. o. b. cars at its sugar mill at Sartartia, and when same is so delivered the company agrees to purchase the same and to pay therefor a minimum price of $3 per ton on a 79 per cent. purity test, and as much more as the test shall indicate, at the rate of 10 cents per ton for each degree or point over and above 79 per cent. test, and plus, also, such additional price per ton as the advance price of sugar at New Orleans, Louisiana, shall indicate or justify, from time to time; this agreement, sale, and purchase having been made on a basis of the price of sugar at New Orleans, Louisiana, on January 24, 1908. Such cane shall be delivered by the purchaser at proper times and in proper quantities, so as to facilitate the operation of the company's mill when the company is grinding the cane of the purchaser, and the company agrees to take and receive daily, during the grinding season, from the purchaser, a reasonable quantity of cane, so as to facilitate the harvesting of the crop, each party looking, not only to its own interest in this respect, but to their mutual interest. The vendee may, however, require the company to accept a daily average of 500 tons of cane from the beginning of delivery until the close of the season, but shall not compel the company to receive a greater daily average. The cane to be delivered under the provisions hereof shall be in good marketable condition, and reasonably clean of fodder and trash; that is to say, in such condition as cane is usually and customarily accepted by mills generally in this section, and shall be topped or cut no higher than the last full red joint. In loading same for the mill on cars, the chains shall be properly placed in cars, and if any cars are delivered without chains properly placed, the company will have the right to charge against such cars the reasonable additional cost of handling the same, and if any cane not meeting the above requirements as to marketable condition is accepted, a reasonable deduction shall be made and allowed thereon, so as to bring it to the proper standard."

"(g) It shall be the duty of the state, acting through its board aforesaid, to maintain on said plantation at all times at least 2,250 acres in good cane stubble, and to keep and maintain the personal property hereby coneveyed, and the improvements on the real estate, in approximately as good condition as they are when delivered to the board. Under the provisions of this conveyance, and this provision with reference to the maintenance of said property, shall apply to the quantity as well as to the quality of all such personal property, and shall continue in force until at least 50 per cent. of the purchase money has been paid, including all interest."

The agreement referred to in defendants' pleading is as follows:

"Whereas, the Imperial Sugar Company, a corporation, has this day executed and delivered to the board of penitentiary commissioners of the state of Texas, a warranty deed conveying to said board and its successors in office, for the use of said state in fee simple, 5,435 acres of land situated in Ft. Bend county, and known as the 'Sartartia Plantation' (less 200 acres with improvements on same, less also the railroad of the Imperial Valley Railroad Company, and an easement for its right of way 100 feet in width through said plantation); and whereas, there was also sold and transferred to the vendee by said deed all the personal property, farming utensils, and improvements on said lands conveyed, which personalty has already been delivered to vendee; and whereas, it is desirable that the contract and undertaking of the vendee shall be evidenced by a separate writing officially signed by the members of the board of penitentiary commissioners: Now, therefore, this instrument is to declare: That said board, in consideration of said deed and the covenants therein contained, undertakes, agrees, and promises, and so far as may be lawful binds its successors in office and the state of Texas, to pay the purchase money, to wit, $160,000, with 6 per cent. interest from January 24, 1909, as stipulated in said deed, as follows, to wit: (1) To maintain the present acreage of sugar cane and to pay said vendor forty per cent. (40%) of the annual crop of cane and cotton grown on said premises, to be credited first to the accrued interest on the $160,000 purchase money, the remainder to be credited upon the principal, and to so continue from year to year until the entire purchase money, principal and interest, is fully paid off and discharged. (2) In consideration of said deed and transfer, and the undertakings therein set out, on the part of the vendor, said board agrees, and as far as may be lawfully done binds its successors in office and the state of Texas, to sell and deliver f. o. b. cars at the cane mill of said vendor situated on the 200 acres reserved as expressed in the deed the annual output of cane (less such amounts as may be reserved for replanting and extension of acreage), and to sell same to the vendor at the minimum price of $3 (three dollars) per ton on a 79 per cent. (seventy-nine per cent.) test, and as much more per ton as the test above that or the price of crude sugar at New Orleans may indicate at the date of delivery, the vendor having bound itself to purchase said cane upon the terms above stated. The price of $3 per ton above named is predicated upon the price of crude sugar at New Orleans on the 24th day of January, 1908, and shall be the basis of comparison in arriving at the increased price of cane per ton from time to time. This obligation for the sale and purchase of cane upon these terms shall be mutually binding for the term of ten years; that is to say, it shall run from the year 1908 to 1917, inclusively, and shall include the crop of 1917, whether harvested and delivered before or after the expiration of that year, and this whether the property transferred by said deed is sooner paid for or not. (3) The vendee in said deed shall maintain the condition of the personalty on the sold premises in practically as good condition as when delivered, both as to quality and quantity, until at least half the purchase money is paid. (4) It is agreed that the vendees shall not undertake to raise on said premises a greater amount of corn, oats, or other forage crops than are necessary for the maintenance of the live stock now on the premises sold, or which may hereafter be placed thereon for the proper cultivation and handling of said premises. But if the vendee should conclude to raise such crops for sale, or for the maintenance of the live stock on other state farms, then the vendor shall have forty per cent. (40%) of such excess so sold or used elsewhere, to go as a credit on the principal and interest of the purchase price; but this restriction as to the use of the premises shall not be in force after the property is paid for."

The defendants alleged that each and all of the covenants and agreements contained in the deed and agreement, which were obligations upon the board of penitentiary commissioners, or upon the defendants as their

successors in office, were complied with and discharged; that the vendor's lien note for $160,000, described in the deed, was paid in full on October 15, 1910, and that upon the payment thereof the vendor's lien contained in said deed became and was satisfied, and the legal title to the lands in controversy became fully vested in the state of Texas; that the plaintiff, on or about the date mentioned, executed and delivered a complete release of said vendor's lien. The release, omitting formal parts, is as follows:

"Whereas, by deed dated March 11, 1908, recorded in the county clerk's office of Ft. Bend county, Texas, in Book ——, page ——, the Imperial Sugar Company conveyed to the board of penitentiary commissioners of the state of Texas, for the use of said state, in fee simple, 5,434 acres of land situated in Ft. Bend county, Texas, and known as the 'Sartartia Plantation' (less 200 acres with improvements on same, less also the railroad of the Imperial Valley Railroad Company, and an easement for the right of way 100 feet in width through said plantation); and whereas, there was also sold and transferred to the vendee by said deed all the personal property, farming utensils, and improvements on said land conveyed, all of which are fully described in said deed, to which reference is here made for all purposes, retaining therein a vendor's lien securing the payment of a certain note for the sum of one hundred and sixty thousand ($160,-000.00) dollars with six per cent. interest from January 24, 1908; and whereas, said note and all interest thereon, in full satisfaction of said incumbrance, have been paid so far as the said vendor's lien note is concerned, but not as regards a certain cane contract, which is to continue in full force and effect: Now, therefore, know all men by these presents, that we, the Imperial Sugar Company (a corporation acting herein through its duly authorized president and secretary), being the legal owner of the above referred to note at the time of its payment, do hereby release the above-described properties from the vendor's lien aforesaid, and declare the same extinguished; but this release is in no manner to be construed as a cancellation of the above-mentioned cane contract, entered into between the said board of penitentiary commissioners and the Imperial Sugar Company, which was also a part of the consideration for the transfer of the property above described."

The defendants alleged that this suit could not be maintained, for the reason that the vendor's lien retained in the deed was attempted to be retained in consideration of the purchase price of the land in controversy, and of a large amount of personal property therein described; that the purchase price of the land and of the personalty was not separated at the time, and is not now capable of being separated, so as to show accurately what part represents the purchase price of the land; that the considerations were so interblended as to produce confusion to such an extent that the vendor's lien did not and could not arise; that in addition thereto, by reason of the various and sundry covenants contained therein, particularly those with reference to the sale, purchase, and delivery of cane covering the period of ten years time, and as to the amount which should be cultivated in cane during any period of time, the agreement was so complicated, and the sum total of the consideration produced such con-

fusion, that it was impossible to separate the actual purchase money for the land from the other matters of consideration, and that the vendor's lien therefore could not arise. It was further alleged that as to the covenants obligating the board of penitentiary commissioners to deliver the cane from the land in controversy, and to sell the same to the plaintiff upon the terms and conditions named therein, that the vendor's lien did not and could not arise, because the same was not a fixed consideration, either of money or its equivalent, whereby there arose a certain absolute debt of the vendees to the plaintiff, in consideration of the transfer of the lands in controversy; that such obligations, when breached, would authorize a suit only for an uncertain and unliquidated demand; that the covenant or obligation was one merely collateral to the purchase of the realty, and was and is not susceptible of accurate ascertainment as to the amount of damages, for the breach of which a vendor's lien could be retained, or would be impressed upon the land; and that to secure same there did not arise and could not exist a vendor's lien.

The defendants further alleged, with reference to the particular covenant to maintain 2,250 acres of land in cane for a period of 10 years, that it was complied with and was satisfied when the vendor's lien note for $160,000 was paid; that, if mistaken in such allegation, then it was understood and agreed that the land should be cultivated in cane in the usual and ordinary way, which was to rotate the crops, so as to keep the same at the usual state of efficiency as cane-producing land; that, if mistaken in that, that the reservation of 2,250 acres as being the amount which should be cultivated was a mutual mistake; that the land was not surveyed at the time the deed was drawn, and the board of penitentiary commissioners did not know accurately the number of acres described in the plaintiff's petition which were capable of being cultivated in and of producing cane, and that as a matter of fact there were only about 1,700 acres thereof capable of being cultivated in and of producing cane; that after observing that there were not 2,250 acres of cane land on said land, and after the fact was fully known to the plaintiff, that the plaintiff continued, without objection, to receive cane from said lands, and that its officers and agents advised with the defendants, and authorized them to cultivate only that portion of land described in its petition as would produce cane, and authorized and advised them to permit said amounts of said cane-producing land to be cultivated in other crops, for the purpose of causing the land to continue as cane-producing land. The defendants further alleged that said covenant was contrary to public policy and void, in that it restricted the use of the land conveyed by the deed, and restricted the rights of sovereignty; that it was not a covenant and agreement concern--

ing the land, or any estate conveyed by said deed; that it was not an easement, was not a covenant running with the realty, and that its breach or violation was no ground for forfeiture, and would not prevent the legal title from vesting in the state, or in the defendants, for the use and benefit of the state. The defendants further alleged that the plaintiff was estopped to seek a recovery of the land in controversy for any breach of any of the covenants set forth in the deed, for the reason that the plaintiff, by said instruments, agreed and promised and became bound to pay for cane delivered to it in accordance with the provisions of said instruments; that during the year 1911 the defendants caused to be grown upon the land in controversy a large quantity of cane, which plaintiff was bound to receive and pay for, but that, although the defendants had delivered the cane in accordance with the covenants and agreements set forth in said instruments, the plaintiff had wholly failed, refused, and declined to pay for the same, and had thereby breached the terms of said covenants and agreements; that the defendants had complied with said covenants up to that time, and would have continued to do so, except for the breach thereof by the plaintiff.

W. O. Murray, S. J. Bass, and W. O. Stamps having been appointed prison commissioners to succeed the original defendants, plaintiff by supplemental petition made them parties defendant.

The plaintiff, by its second supplemental petition specially excepted on numerous grounds to the plea in abatement of the defendants, and also to various allegations in their first amended original answer, which exceptions need not be further noticed. The plaintiff admitted that it executed the deed referred to on February 17, 1908, and that it conditionally conveyed thereby the lands sued for; that notwithstanding the fact that the prison commissioners agreed for the term of 10 years, including the year 1908, to sell to the plaintiff under the terms therein mentioned all of the cane grown upon said premises, and notwithstanding the further fact that they contracted and agreed as a part of the contract price of said land that they would maintain on said plantation to be delivered under the contract of sale aforesaid, at all times, at least 2,250 acres in good cane stubble, and notwithstanding the fact that the vendor agreed to give and the state accepted an option during said 10-year period to sell and to buy the sugar mill and lands upon which it was situated as a part of the consideration for said contract of sale, the state directly failed and refused to comply with the provisions of said contract of sale, and refused and has failed for 10 years to sell, under the terms of said contract, to the plaintiff, the cane grown upon said premises, as it was bound to do, but only sold and delivered the cane grown upon said premises during the years 1908, 1909, and 1910; that the state failed and refused to maintain on said plantation at all times 2,250 acres in good cane stubble, and to properly cultivate and harvest the same, as it was bound to do, and to deliver and sell same to the plaintiff under the terms of the contract, but, on the contrary, 2,250 acres of the cane were maintained on said land, and the crops therefrom sold to the plaintiff only for the year 1908; that for the year 1908 the cane raised on said plantation was sold to the plaintiff under the terms of the said contract, but much of the stubble which existed during the year 1908 was plowed up, so that not more than 1,700 acres of said land were planted in cane during the year 1909 and delivered to the plaintiff under the terms of said contract, and a much less acreage was planted in cane during the year 1910, and sold and delivered to the plaintiff, and the state of Texas, acting through its duly authorized agents and officers, openly, boldly, and clearly repudiated the obligations contained in said conveyance, and the defendants openly declared that the state would not continue after 1910, and during the year 1911 and subsequent years, to maintain 2,250 acres in cane, and sell the same under the terms of said contract to the plaintiff, nor would the state sell any of the cane under the terms of said contract which might be raised upon said premises to the plaintiff, and completely repudiated any obligation so to do on the part of the state; that the state, acting through its said agents and officers, had repudiated any obligation whatever to maintain on said premises 2,250 acres of cane, or any other acreage, by reason of the conditions and obligations contained in said contract of sale; that, the contract of sale having been repudiated by the state, plaintiff had exercised its right to declare the conditional sale abandoned and forfeited, and asserted its superior title retained in the conveyance, and instituted this suit to remove the defendants and their agents therefrom as trespassers.

It is further alleged that the part of the contract of sale of the land in controversy which provided for the annual maintaining and cultivation of 2,250 acres in cane, to be sold to the plaintiff for a term of 10 years, including the year 1908, as well as other cane which might be grown on said lands for 10 years, was and constituted the greater part of the consideration agreed to be paid for said lands, which fact was well known to the state of Texas and its officers and agents then acting for it in the purchase of said lands; that if said contract had been faithfully performed and carried out on the part of the state, as was by all parties contemplated and agreed, said 2,250 acres would have produced annually not less than 33,750 tons of good cane, and ought to have produced 40,000 tons; that such cane would have been worth to the plaintiff, and would have produced a profit to it, of not less than

$2 per ton; that, if the contract had been faithfully performed by the state of Texas, plaintiff would have realized a profit annually from said cane of not less than $67,500, and possibly a larger sum, but the state had deprived the plaintiff of this sum by the nonperformance and repudiation of said contract, and to that extent had failed and refused to pay to the plaintiff that part of the consideration agreed to be paid for said lands. That with reference to the personal property sold with said lands, the contract itself as written shows that the parties thereto understood and agreed that when one-half of said $160,000 had been paid the lien and superior title reserved would be canceled and eliminated in so far as the personal property was concerned, and after the payment of said $160,000 it was so dealt with and treated by both parties. Plaintiff further alleged that it had paid the state of Texas for all cane it had ever received from it from or off of said lands since same was contracted to be sold to the state, and that it now owed the state nothing therefor, and all such cane was in fact paid for long before it was delivered to the plaintiff by the state of Texas.

The plaintiff further alleged that there was no mistake in said contract, mutual or otherwise, relative to the number of acres of cane contracted to be maintained and cultivated on said lands for the 10 years; that all the parties participating in the making and executing of said contract well understood and agreed that there was to be maintained and properly cultivated on said land each year for 10 years, from and embracing the year 1908, 2,250 acres in good cane, and that all the cane upon said land was to be sold and delivered by the state to the plaintiff under the terms of said contract of sale, and this regardless of the number of acres then planted in cane upon said land; that in fact there was at the time of the execution of said contract of sale then planted in cane upon said land at least 2,250 acres, all then in good cane stubble and ready for cultivation; that there was at no time any good reason or necessity for abandoning any part of said acreage for the growing of cane, nor was there any use to plant any portion thereof in any other kind of crop; that if any of said lands planted in cane, by reason of the death of the stubble, or for any other reason, was rendered unsuitable to cultivate in cane, it was the duty of the state under the terms of the contract to replant the same in cane, or to plant additional and new acreage upon said land in cane to replace the plowed-up stubble or abandoned land, as there was plenty of good land on said plantation useful and suitable for growing cane profitably to make up said quantity of 2,250 acres.

By first supplemental answer the defendants excepted to certain portions of the plaintiff's second supplemental petition, and denied that they had openly declared to the plaintiff that the state would not continue to maintain after 1910, and during the year 1911 and subsequent years, 2,250 acres in cane, and sell the same under the terms of said contract. They further denied that they sold cane under any other contract than that contained in the deed to the premises in controversy, and averred that they were ready and willing to carry out the terms of said contract up to and including 1911, and would have continued to do so, but for the failure of plaintiff to pay for the cane delivered to it during the year 1911, as alleged in their first amended original answer.

By agreement of the parties the judgment of the court upon the pleas and exceptions was withheld until the evidence was heard. After the evidence had been introduced, the cause was by consent of parties withdrawn from the jury, and the matters of fact as well as of law submitted to the court. After having the case under advisement for some time the court rendered the following judgment:

"The court being of the opinion that this is a suit against the state of Texas, and there appearing nothing in the pleadings or evidence to show that the state had given permission to the plaintiff to sue, nor had consented to the prosecution of said suit, the court is of the opinion that the defendants' pleas in abatement should be sustained and this case be dismissed. The court is further of the opinion that the provisions, agreements, and contracts contained in a deed offered in evidence by both parties, of date February 17, 1908, from Imperial Sugar Company to W. H. Gill and others, for and in behalf of the state, wherein the state agreed to cultivate in cane the number of acres set forth in said deed for a term of ten years, and to deliver the cane so raised to and sell the same to Imperial Sugar Company at the price in said deed stipulated, constitute a covenant, for the breach of which, if breached, the right to recover the land in an action of trespass to try title in law does not lie, and that for this reason plaintiff should not have judgment, but the defendant should."

[1] Appellant under an appropriate assignment of error complains of the judgment sustaining the defendants' plea in abatement. The proposition submitted under this assignment is as follows:

"It appearing that the defendants were in actual possession of the land in controversy, the action of trespass to try title was maintainable against them, although they claimed no personal interest therein, and held such possession only as officers and agents of the state, and the suit was not one against the state."

The suit is one to recover the title and possession of the land against defendants, who are alleged to be wrongfully withholding possession from plaintiff. If plaintiff has shown title and the right of possession, the fact that those wrongfully holding possession are not claiming any interest in the property for themselves, but are holding and claiming for and as agents of the state, does not defeat plaintiff's right to maintain the suit on the ground that it is a suit against the state brought without its consent. The right of the citizen to maintain a suit and recover property wrongfully withheld from him by an officer or agent of the state without first

obtaining the consent of the state to bring the suit is firmly established by the decisions of the Supreme Court of the United States and of this state, and so far as we are informed is no longer questioned by the courts of any state in the Union. The question was definitely settled by the Supreme Court of the United States in the case of United States v. Lee, 106 U. S. 197, 1 Sup. Ct. 240, 27 L. Ed. 171. The question as presented in that case was stated and answered by Mr. Justice Miller as follows:

"Could any action be maintained against the defendants for the possession of the land in controversy, under the circumstances of the relation of that possession to the United States, however clear the legal right to that possession might be in plaintiff? * * * The counsel for plaintiffs in error and in behalf of the United States assert the proposition that, though it has been ascertained by the verdict of the jury, in which no error is found, that the plaintiff has the title to the land in controversy, and that what is set up in behalf of the United States is no title at all, the court can render no judgment in favor of the plaintiff against the defendants in the action, because the latter hold the property as officers and agents of the United States, and it is appropriated to lawful public uses. This proposition rests on the principle that the United States cannot be lawfully sued without its consent in any case, and that no action can be maintained against any individual without such consent, where the judgment must depend on the right of the United States to property held by such persons as officers or agents for the government. * * * Under our system the *people*, who are there [in England] called *subjects*, are the sovereign. Their rights, whether collective or individual, are not bound to give way to a sentiment of loyalty to the person of a monarch. The citizen here knows no person, however near to those in power, or however powerful himself, to whom he need yield the rights which the law secures to him when it is well administered. When he, in one of the courts of competent jurisdiction, has established his right to property, there is no reason why deference to any person, natural or artificial, not even the United States, should prevent him from using the means which the law gives him for the protection and enforcement of that right."

The learned justice sustained his opinion in that case by citation and discussion of the opinions in many previous cases decided by that court and by argument which places his opinion among the greatest of that great court. This decision has remained unassailed and unassailable, and been uniformly followed by the courts of the several states. There is a clear distinction between a suit against an officer for a wrong committed by him in the name of the state, and suits brought against an officer to prevent the exercise by the state through such officer of some act of sovereignty, or suits against an officer or agent of the state to enforce specific performance of a contract made for the state, or to enjoin the breach of such contract, or recover damages for such breach, or to cancel or nullify a contract made for the benefit of the state.

Suits of the second class named above, while nominally against the officer, are really suits against the state. This character of suits are illustrated by the following cases: In re Ayers, 123 U. S. 505, 8 Sup. Ct. 164, 31 L. Ed. 216; Fitz v. McGhee, 172 U. S. 526, 19 Sup. Ct. 269, 43 L. Ed. 535; Stephens v. Railway Co., 100 Tex. 179, 97 S. W. 309; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608, 29 L. Ed. 805; Railway Co. v. Conley, 67 W. Va. 129, 67 S. E. 613; Thomson v. Baker, 90 Tex. 168, 38 S. W. 21. This distinction is discussed in the case of Poindexter v. Greenhow, 114 U. S. 291, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; and the reason for holding that suits against an officer for wrongs committed by him in the name of the state are not to be regarded as suits against the state is thus forcibly stated:

"This distinction is essential to the idea of constitutional government. To deny it or blot it out obliterates the line of demarkation that separates constitutional government from absolutism, free self-government based on the sovereignty of the people from that despotism, whether of the one or the many, which enables the agent of the state to declare and decree that he is the state—to say, 'L'état c'est moi.' Of what avail are written Constitutions, whose Bills of Right for the security of individual liberty have been written, too often, with the blood of martyrs shed upon the battlefield and the scaffold, if their limitations and restraints upon power may be overpassed with impunity by the very agencies created and appointed to guard, defend, and enforce them; and that, too, with the sacred authority of law, not only compelling obedience, but entitled to respect? And how else can these principles of individual liberty and right be maintained, if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders, who are the instruments of wrong, whenever they interpose the shield of the state? The doctrine is not to be tolerated. The whole frame and scheme of the political institutions of this country, state and federal, protest against it. Their continued existence is not compatible with it. It is the doctrine of absolutism, pure, simple, and naked, and of communism, which is its twin—the double progeny of the same evil birth."

Plaintiff in this suit does not seek specific performance of the contract made with the penitentiary commissioners, nor to enjoin its breach, nor to recover damages for its breach, but, claiming the title and right of possession to the land, sues to regain that title and possession from the persons alleged to be wrongfully withholding such possession. Our statute requires that such suit shall be brought against the person in possession, and, while any other person claiming title to the land may be made a party, the only necessary party is the person in possession. R. S. arts. 7737 and 7738. It is well settled by the decisions of the higher courts of this state that a suit to recover the title and possession of property wrongfully held by an officer or agent of the state, who claims no interest in the property, but is holding only for the state, is not a suit against the state, which can only be brought with the consent of the state. Whatley v. Patten, 10 Tex. Civ. App. 77, 31 S. W. 60; Stanley v. Schwalby,

85 Tex. 349, 19 S. W. 264; Conley v. Daughters of the Republic, 156 S. W. 197.

The fact that the defendants in this case were rightfully in possession of the land under the contract prior to its alleged breach and repudiation by them does not affect the question of whether the suit is one against the state. If the superior title remained in appellant, and could only vest in the state upon the performance by the state of the contract which formed a part of the consideration for the conveyance, upon breach of the contract by the state the appellant had the right to treat the contract of sale as forfeited and sue the persons in possession for recovery of the land, and such suit cannot be defeated on the ground that it is a suit to enforce the contract against the state. The contention of appellees, that the suit is one against the state to enforce the contract, is fully answered by the Supreme Court of Michigan in the cases of State Bank v. Hastings, 1 Doug. 225, 41 Am. Dec. 549, and State Bank v. Hammond, 1 Doug. 527. The trial court erred in sustaining the plea in abatement.

[2] This brings us to a consideration of the second ground upon which the trial court rendered judgment for the defendants, as before set out, and which is assailed by appellant under an appropriate assignment of error. The court, though specially requested to find whether or not there was a breach of the contract by the board to maintain 2,250 acres of the land in good cane stubble and to sell and deliver the annual crop grown on said land to appellant for a term of 10 years upon the terms stated in the contract, failed to make a fact finding upon this issue. The evidence amply justified, if it does not compel, the finding that defendants failed to comply with these provisions of the contract and expressly repudiated this portion of their contract obligation and notified appellant that they would not be bound thereby. The evidence shows that the agreement of the defendants to cultivate 2,250 acres of the land in cane and deliver the annual crop to plaintiff at the price and upon the terms stated in the contract was a material part of the consideration for the sale of the land, and such contract, if performed by the defendants, would have been of more value to the plaintiff than the amount of money paid it as part of the consideration for the sale. The deed, as before set out, expressly provides that a vendor's lien and "the superior title to the land" is retained and reserved by the plaintiff to fully insure the obligation assumed by the defendants and that "upon the final payment of said consideration and performance of said obligations this deed shall become absolute." This provision of the deed is plain and unambiguous and there is no room for construction. The superior title is reserved in the seller and is to pass to the buyer only upon condition of the final performance of the contract in consideration of which the conveyance was made. It follows that, if defendants failed to comply with their contract and have repudiated its obligations, plaintiff's title remains in it unimpaired by the executory contract of sale or conditional deed executed and delivered to defendants.

[3] There is no merit in appellees' contention that the attempted reservation of a vendor's lien and the superior title to the land was ineffectual because the deed conveyed personal property as well as land, and the price of the land and of the personal property not being separately stated, it cannot be determined what part of the consideration was given for the personal property nor what part for the land. In the first place, we are inclined to think that the contract shows that the $160,000 paid in money included all of the consideration given for the personal property. We think the provision in the contract, that the agreement of the defendants to keep and maintain the personal property in good condition should only remain in force until 50 per cent. of the purchase money was paid, indicates that all of the purchase price of the personal property was included in the $160,000. But, be this as it may, the parties have stipulated that the superior title should remain in the vendor and pass to the vendee only upon condition that the contract be fully performed, and the fact that the consideration for the contract may have been partly the conveyance of the personal property cannot affect the binding force of these stipulations. The right to annex a condition to a conveyance is a necessary incident to the right to own and convey the property, and a conveyance may be made conditional upon the performance of any lawful contract. State Bank v. Hastings, supra. The parties having made the passing of the title conditional, the question of whether an implied vendor's lien would exist to enforce the performance of the contract, or the mere reservation of an express vendor's lien would make the conveyance executory and the title one upon condition, becomes immaterial.

[4] The contention that the contract to cultivate the land in cane and sell the cane grown thereon to the appellant is a covenant, and not a condition, and that therefore the breach of the contract would not prevent the title vesting in defendants, is equally untenable. The contract is in form a covenant, and so is a contract to pay money; but the performance of either may be made a condition for the vesting of title.

[5] It is unnecessary to cite authorities upon the proposition that a vendor, who has reserved an express vendor's lien to secure the consideration for a conveyance, in event of default by the vendee, may rescind the contract, and sue in trespass to try title, and recover the land. The authorities are also uniform in support of the doctrine that where

a conveyance is made upon condition, and the condition is broken, the vendor may recover the land. Alford v. Alford, 1 Tex. Civ. App. 245, 21 S. W. 283; Railway Co. v. Dunman, 74 Tex. 265, 11 S. W. 1094; Gibson v. Fifer, 21 Tex. 262. There is no sounder principle in law nor in morals than that one cannot hold property bought under a contract and repudiate the obligation of the contract upon which title is conditioned. White v. Cole, 87 Tex. 502, 29 S. W. 759; Railway Co. v. Gurley, 92 Tex. 233, 47 S. W. 513; McPherson v. Johnson, 69 Tex. 484, 6 S. W. 798. These general principles of law are in no way affected by the fact that the deed to the defendants was for the use and benefit of the state. The Supreme Court of this state, in the case of Fristoe v. Blum, 92 Tex. 80, 45 S. W. 998, in discussing the rights of parties under contracts of this kind, say:

"A clear understanding of the relation in which the state stands to the purchasers in these contracts will greatly facilitate a proper solution of the questions upon which this case depends. It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its own courts, or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual."

[6] We cannot agree with the trial judge that the release executed by the appellant of the vendor's lien retained in the deed to secure the payment of the $160,000 can be construed as a release of the reservation of title in the deed retained to secure the performance by defendants of the contract in regard to the cultivation of the land in cane and the sale to appellant of the cane grown thereon. On the contrary, the release, which we have before set out, expressly provides that the cane contract shall "continue in full force and effect," and that the release "is in no manner to be construed as a cancellation of the above-mentioned cane contract, * * * which was also a part of the consideration for the transfer of the property." This reference to the cane contract should be construed as referring to the contract in its entirety, which includes as well the agreement that the title is reserved to secure the performance by the vendees of the contract, and that the deed shall become absolute only upon such performance, as the obligation of the vendees to cultivate the land in cane and sell and deliver the cane grown thereon to appellant. If there are any general words in the release which could be construed as affecting the reservation of title to secure the performance of the cane contract, the provision of the instrument above quoted would restrict the meaning of such words. The rule of construction is thus stated by our Supreme Court in the case of Railway Co.

v. McCarty, 94 Tex. 302, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854:

"Notwithstanding that the release concludes with general words, yet the law, in order to prevent surprises, will construe it to relate to the particular matter recited, which was under the contemplation of the parties, and intended to be released."

This rule was also applied by our Supreme Court in the case of Sanborn v. Crowdus, 100 Tex. 605, 102 S. W. 719.

[7] The failure of appellant to assert its superior title to the land upon the first partial breach of the contract by defendants was not a waiver of its title. The contract of defendants was to continue for 10 years, and no acquiescence in or waiver of one failure could be regarded as a waiver of future performance, and suit to recover the land was not required to be brought until there was a repudiation of the entire contract by the defendants. Thompson v. Robinson, 93 Tex. 171, 54 S. W. 243, 77 Am. St. Rep. 843. If the contract had been breached and repudiated as claimed by appellant, it has the right to assert its superior title to the land expressly reserved in the deed to secure the performance of the contract. If the state had made itself a party to the suit, it might have shown equities which would have entitled it, upon offering to do equity and compensate appellant for the loss sustained by it by reason of the breach of the contract by the agents of the state, to defeat appellant's suit to recover the land; but it cannot repudiate the obligations upon the performance of which its title is conditioned, and by its agents hold appellant's land and deny it any redress for the damages sustained by the breach of the contract.

From the conclusions before expressed, it follows that the judgment of the court below must be reversed, and the cause remanded; and it is so ordered.

Reversed and remanded.

LANE, J., not sitting.