# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00685-CV

**The State of Texas; Jerry Patterson, in his Official Capacities as Land Commissioner and as Chairman of the School Land Board; and The General Land Office, Appellants**

**v.**

**BP America Production Company, as Successor to Vastar Resources, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-01-003202, HONORABLE, W. JEANNE MEURER, JUDGE PRESIDING

## O P I N I O N

This is an interlocutory appeal from a district court order denying a plea to the jurisdiction based on sovereign immunity. The underlying controversy concerns ownership of Harris County property that, while once fast land, now lies under the waters of the San Jacinto River. Claiming that this property is State-owned submerged land, the Commissioner of the General Land Office, through the School Land Board, granted oil and gas leases on the property to a third party, Etoco, Inc. Appellee BP America Production Company claims the same property under a recorded deed and asserts that it retained title because the San Jacinto River's encroachment resulted from subsidence caused by the acts of third parties.

BP[1] sued the State of Texas; the General Land Office (GLO); and the Hon. Jerry Patterson, in his official capacities as Land Commissioner and as Chairman of the School Land Board[2] (collectively, the State Defendants); as well as Patterson, in his individual capacity; and Etoco. BP asserted a trespass-to-try-title claim, claims for declaratory relief under the Uniform Declaratory Judgments Act (UDJA) and section 2001.038 of the Administrative Procedure Act, a constitutional takings claim, and a statutory takings claim under the Private Real Property Rights Preservation Act (PRPRPA). The State Defendants filed a plea to the jurisdiction, asserting that sovereign immunity barred all of BP's claims. The district court overruled the State Defendants' plea in its entirety.

In a single issue, the State Defendants contend that the district court erred in denying their plea to the jurisdiction. Concluding that the district court erred in denying the plea as to most of BP's UDJA claims, its APA claim, and its PRPRPA claim, we will reverse the district court's order in part and affirm in part.

## STANDARD AND SCOPE OF REVIEW

An assertion that sovereign immunity from suit deprives a trial court of subject-matter jurisdiction over a claim may be raised through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*,

---

[1] The dispute originated between the State Defendants and BP's predecessor in interest, Vastar Resources, Inc. For clarity, we will refer to both Vastar and BP simply as "BP."

[2] When the dispute originated, the Land Commissioner was the Hon. David Dewhurst, and BP initially named Dewhurst, in his official capacities, as a defendant in its lawsuit. After succeeding Dewhurst as Land Commissioner, Patterson, in his official capacities, was substituted as a party. *See* Tex. R. App. P. 7.

2

34 S.W.3d 547, 554 (Tex. 2000); *Hendee v. Dewhurst*, 228 S.W.3d 354, 366 (Tex. App.—Austin 2007, pet. denied). The determination of whether the trial court has subject-matter jurisdiction begins with the pleadings. *See Miranda*, 133 S.W.3d at 226. The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the pleader has met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.* We also assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Id.* at 227 (citing *Bland*, 34 S.W.3d at 555). Where such a challenge implicates the merits of the pleader's claims, the defendant must meet the same burden as the movant in a traditional summary judgment motion. *Id.* at 227-28; *see Hendee*, 228 S.W.3d at 366-69. In resolving the jurisdictional challenges presented by the plea, we may also consider evidence that the pleader has attached to its petition or submitted in opposition to the plea. *See Bland*, 34 S.W.3d at 555; *Hendee*, 228 S.W.3d at 361 n.6, 362 n.7, 365 nn.14-15.

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

3

# THE RECORD

In its live pleading—its third amended petition—BP alleges that it is "the fee simple owner of 810.041 acres of real property located in Harris County, Texas (the 'Subject Property')," and that it claims the property under a valid deed.[3]  Portions of the "Subject Property," BP pleads, are "adjacent to the San Jacinto River" and "have been encroached upon by water from the river." The State Defendants acknowledge in their brief that these areas (the "disputed property") were "once fast land but [are] now covered by the waters of the San Jacinto River."  BP's petition and attachments reflect that the State Defendants have claimed title to the disputed property as State-owned submerged land.[4]  BP pleads that, to the contrary, it has retained title to the disputed property, notwithstanding the San Jacinto River's encroachment, because the encroachment was due to "a significant amount of subsidence caused by the withdrawal of groundwater by nearby municipalities."[5]

BP further alleges that "[i]n May 1997, the State, by action of its School Land Board . . . and the Commissioner of the GLO pursuant to Chapters 32 and 52 of the Texas Natural Resources Code and Chapter 9 of the Texas Administrative Code, intentionally granted oil, gas, and mineral leases to Etoco for acreage that included the [disputed property]."  BP pleads that

---

[3] BP's petition incorporated by reference a map of the property.

[4] *See, e.g.*, *TH Investments, Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 181-84 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing Tex. Nat. Res. Code Ann. § 11.012(c) (West 2001) and *Lorino v. Crawford Packing*, 175 S.W.2d 410, 413 (Tex. 1943)).

[5] *See id*. at 187-89 (citing *Coastal Indus. Water Auth. v. York*, 532 S.W.2d 949, 951-54 (Tex. 1976)).  BP further alleges that the disputed property is "several miles upstream from Galveston Bay."

"[t]he state's purported leases to Etoco are for public use, in that the royalty to be received is for the benefit of public education." In September 2000, BP adds, it also purported to grant Etoco an oil, gas, and mineral lease for acreage that included the disputed property. Thereafter, on October 2, 2000, BP asserts, the GLO legal staff wrote Etoco asserting that the disputed property was State-owned submerged land and demanding payment to the State of any royalties for hydrocarbons produced therefrom.[6]

In November 2000, BP further alleges, Etoco formed three different units that each included portions of the disputed property, and placed one well on each unit. It adds that two of these wells began production in April 2001, and the third began production in August 2001. Since November 2001, BP further pleads, Etoco has deposited into the court's registry royalties on production from the disputed property assigned to the three wells.[7]

Based on these factual allegations, BP asserts a trespass-to-try title claim;[8] claims for declaratory relief under the UDJA[9] and section 2001.038 of the Administrative Procedures Act;[10] a takings claim under the takings clauses of the state and federal constitutions, the due course of law clause of the state constitution, and the due process clause of the federal constitution;[11] and a

---

[6] BP's petition incorporated by reference a copy of this letter.

[7] The State Defendants represent that Etoco has paid over $2 million in royalties into the court's registry.

[8] *See* Tex. Prop. Code Ann. §§ 22.001-.045 (West 2000); *see also* Tex. R. Civ. P. 783-809.

[9] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

[10] *See* Tex. Gov't Code Ann. § 2001.038 (West 2008).

[11] *See* U.S. Const. amend. V, XIV; Tex. Const. art. I, §§ 17, 19.

statutory takings claim under PRPRPA.[12]  BP does not allege that it obtained a legislative waiver of sovereign immunity beyond any provided in the statutes themselves.

The State Defendants filed a plea to the jurisdiction.  They asserted that sovereign immunity bars each of BP's claims, that BP has failed to allege any legislative waiver of that immunity, and that the district court, consequently, lacked subject-matter jurisdiction over the suit. The State Defendants relied solely on BP's pleadings and attachments; they did not present jurisdictional evidence to challenge the existence of the facts BP alleged.  Emphasizing BP's acknowledgments in its pleadings and attachments that the State had asserted a title claim to the disputed property, the State Defendants argued that each of BP's claims would require the district court to determine the validity of that claim—to "try the State's title"—and that sovereign immunity bars the district court from deciding such an issue absent legislative consent.  Relatedly, the State Defendants argued that BP's claims further implicated sovereign immunity by seeking "money damages"—if BP won the title dispute, it would stand to recover the accrued royalties Etoco had paid into the court's registry.  While acknowledging that the UDJA, APA section 2001.038, the takings clause of the Texas Constitution, and PRPRPA each waive sovereign immunity to some extent,[13] the State Defendants urged that (1) the UDJA and section 2001.038 did not waive sovereign immunity as to suits against the State to try its title to property; (2) BP failed to allege a proper takings claim because its pleadings demonstrate "the State Defendants believe that the State —not

---

[12]  *See* Tex. Gov't Code Ann. §§ 2007.001-.045 (West 2008).

[13]  In its plea, the State Defendants stated that "the UDJA waives sovereign immunity to construe certain legislative enactments."

BP—owns the disputed land" and thus "lacked the requisite intent to take property belonging to BP"; and (3) BP failed to exhaust administrative remedies before filing its PRPRPA claim.[14] The district court denied the State Defendants' plea in its entirety. The State Defendants appealed.[15]

## ANALYSIS

In a single issue on appeal, the State Defendants argue that the district court erred in denying their plea to the jurisdiction.

**Trespass-to-try-title claim**

Through its trespass-to-try-title claim, BP sought judgment that it "has title to the [disputed property,] ousting the Commissioner and, to the extent it claims under the lease from the Commissioner, Etoco from that property." *See* Tex. R. Civ. P. 784, 785, 804. BP's claim implicates sovereign immunity, the State Defendants argue, because it seeks to adjudicate the validity of the State's claim to the disputed property and obtain a judgment that BP owns the disputed property and is entitled to possession. In support of these contentions, the State Defendants rely principally on *State v. Lain*, 349 S.W.2d 579 (Tex. 1961).

---

[14] In addition to the other relief it seeks, BP prayed for "[a]n award of reasonable and necessary attorney's fees incurred in seeking the relief requested in this cause of action." The State Defendants have not separately challenged whether sovereign immunity bars BP's recovery of attorney's fees.

[15] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008). Etoco and Patterson, in his individual capacity, did not join in the plea to the jurisdiction and are not parties to this appeal.

7

In *Lain*, the plaintiff brought a trespass-to-try-title action against the State of Texas and several state officials, in both their official and individual capacities, alleging that the defendants had constructed a ferry landing and dredged a channel over property that the plaintiff owned in fee simple. *See id.* at 580. The State filed a plea to the jurisdiction based on sovereign immunity, which the trial court granted. *See id.* The state officials also asserted pleas to the jurisdiction based on sovereign immunity, urging that they had acted only in their official capacities. *See id.* The officials' pleas were overruled by the trial court. *See id.* The plaintiff ultimately obtained judgment against the state officials for title and possession of the property, as well as an injunction enjoining them from trespassing on the property. *See id.* The state officials appealed, asserting that the suit against them was a suit against the State and thus barred by sovereign immunity. The supreme court rejected these contentions, upheld the trial court's title determination, and affirmed the judgment. *Id.* at 581-82.

The supreme court acknowledged that the state officials "assert rights of use and occupancy only as state officials and employees acting for and on behalf of the state and claim no right of use and occupancy as individuals." *Id.* at 581. Nevertheless, it held the officials were not protected by sovereign immunity where it had been determined that, in fact, the plaintiff and not the State had superior title and right of possession. *See id.* at 581-82. The court reasoned:

> One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting on behalf of the state.

8

*Id.* at 581. In support, the supreme court cited what it termed "[w]ell-reasoned and authoritative decisions of the Supreme Court of the United States and of the courts of this state support[ing] the view that a plea of sovereign immunity by officials of the sovereign will not be sustained in a suit by the owner of land having right of possession when the sovereign has neither title nor right of possession." *Id.* at 581-82 (citing *United States v. Lee*, 106 U.S. 196 (1882); *Stanley v. Schwalby*, 19 S.W. 264 (Tex. 1892), *rev'd on other grounds*, 147 U.S. 508 (1893); *Imperial Sugar Co. v. Cabell*, 179 S.W. 83 (Tex. Civ. App.—Galveston 1915, no writ); *Whatley v. Patten*, 31 S.W. 60 (Tex. Civ. App.—Galveston 1895, writ ref'd)). "The rationale of the rule," the *Lain* court explained, "is that in such cases possession is not in fact held for the sovereign, but is wrongfully held." *Id.* at 582. Conversely, the supreme court reasoned, sovereign immunity would bar the suit if, in fact, the State had superior title or right of possession, because in that case the sovereign's officials would be holding the sovereign's property as its agents. *See id.* The court also observed that, in the context of this type of case, it was irrelevant that the plaintiff had sued the state officials in their "official capacities":

> That those wrongfully claiming title or the right of possession are sued in their official capacities as well as individually cannot alter the rule. To hold otherwise would exalt form over substance. If the claim is only for and on behalf of the sovereign, it cannot be material whether the "official" nature of the claim is asserted in the plaintiffs' petition or in the defendants' answer. The judgment against the individuals, predicated as it is upon an incidental determination that title and right of possession is in the plaintiff, is not binding on the sovereign.

*Id.*

As for how the trial court was to determine whether the property was being held for the State or "wrongfully held," the *Lain* court explained:

> When in this state the sovereign is made a party to a suit for land without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained in limine. But the cited cases clearly recognize that when officials of the state are the only defendants, or the only remaining defendants, and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in. If the plaintiff fails to establish his title and right of possession, a take nothing judgment should be entered against him as in other trespass to try title cases.[16] If the evidence establishes superior title and right of possession in the sovereign, the officials are rightfully in possession of the sovereign's land as agents of the sovereign and their plea to the jurisdiction based on sovereign immunity should be sustained. If, on the other hand, the evidence establishes superior title and right of possession in the plaintiff, possession by officials of the sovereign is wrongful and the plaintiff is entitled to relief. In that event the plea to the jurisdiction based on sovereign immunity should be overruled and appropriate relief should be awarded against those in possession.

*Id*. In an earlier case, the supreme court had held that sovereign immunity did not bar a claim against state officials to enjoin a threatened trespass on land where the plaintiff had pled superior title and right of possession and there was nothing in the record on the plea to the jurisdiction—which, in that case, was limited to the plaintiff's pleadings—indicating the officials were acting under color of a competing State claim. *See Griffin v. Hawn*, 341 S.W.2d 151, 152-54 (Tex. 1960).[17] In *Lain*, the

---

[16] This statement refers to the burden of proof in a trespass-to-try-title case—specifically, the requirement that a plaintiff in a trespass-to-try-title case must affirmatively prove his own title and right of possession in the property and cannot prevail based solely on weaknesses in the defendant's title. *See Stradt v. First United Methodist Church*, 573 S.W.2d 186, 189 (Tex. 1978).

[17] The recent *Porretto* case had a similar procedural posture. *See Porretto v. Patterson*, 251 S.W.3d 701, 711-12 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that trial court erred in sustaining pleas to jurisdiction of Commissioner Patterson and a local official where there

court dispelled any implication from *Griffin* that sovereign immunity would bar such a suit if the record had demonstrated such a claim by the State. The supreme court held that "[w]hen suit for recovery of title to and possession of land, filed without legislative consent, is not against the state itself but is against individuals only, the mere assertion by pleading that the defendants claim title or right of possession as officials of the state and on behalf of the state will not bar prosecution of the suit." *See Lain*, 349 S.W.2d at 581. Rather, as reflected in the above quotation, the trial court had not only subject-matter jurisdiction but a "duty" to decide the merits of the plaintiff's trespass-to-try-title claim in order to determine whether sovereign immunity applies. *See id.* at 582. In this respect, the procedure is analogous to that in suits seeking to compel a state official to act within his or her statutory authority, in which the trial court sometimes must decide the merits of the claim that the official is acting beyond his authority in order to determine whether sovereign immunity bars the suit. *See, e.g.*, *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945).

The State Defendants rely on *Lain* for the proposition that sovereign immunity bars BP's trespass-to-try-title claim against each of them—the State of Texas, the GLO, and Commissioner Patterson in his official capacity—because it seeks a judgment that BP, not the State, owns the disputed property and is entitled to possession. BP responds that it is asserting its trespass-to-try-title claim against Commissioner Patterson, in his official capacity, not the State or GLO as parties, and that *Lain* holds sovereign immunity does not bar such a claim. The State Defendants reply that *Lain*'s holdings regarding claims against state officers in their official capacity do not

was no evidence in the record that the governmental entities had claimed a superior title or right to the property).

11

apply where, as here, the record reveals that the State has asserted a colorable title claim to the property at issue. They emphasize that the state officials in *Lain* did not "question plaintiffs' title to the land," but asserted only rights of use and occupancy. *See Lain*, 349 S.W.2d at 581.

To understand *Lain*'s holdings and their application to this case, it is important to understand the "[w]ell-reasoned and authoritative decisions" on which the *Lain* court relied. While uniformly holding that sovereign immunity would bar a landowner's suit to recover possession of property if the sovereign was named as a party defendant, these decisions recognized that such a suit would not necessarily implicate sovereign immunity if asserted only against the officials or employees who were holding the property on the sovereign's behalf. *Lee*, 106 U.S. at 204-23; *Stanley*, 19 S.W. at 352-53; *Imperial Sugar Co.*, 179 S.W. at 88-90; *Whatley*, 31 S.W. at 60-62. In such a suit, in the view of these cases, the trial court had subject-matter jurisdiction to determine whether the plaintiff or the sovereign had superior title or right of possession in the property in order to determine whether the officials had the right, as against the plaintiff, to hold the property as the sovereign's agents. *Stanley*, 19 S.W. at 352-53 ("The plea of these defendants [that suit was barred by sovereign immunity because they lawfully possessed the property only as officers and agents of the federal government] was in effect an assertion of a superior outstanding title in the United States, and the court had power to examine and determine that question, with a view to ascertain and determine the rights of the parties properly before the court"). If the trial court found that the sovereign had superior title or right of possession, sovereign immunity would shield the officials, the theory went, because they would in fact be acting as the sovereign's agents holding the sovereign's property. *See id.* But if it was determined that the plaintiff had superior title or right of

12

possession, these cases reasoned that, as the *Lain* court put it, "possession is not in fact held for the sovereign but is wrongfully held," *Lain*, 349 S.W.2d at 582, in which case the government officials were considered mere private tortfeasors who were subject to whatever remedies the general law provided for the infringement. *See Stanley*, 19 S.W. at 352 ("Under the decision in [*Lee*], and the cases therein cited, while the United States cannot be sued, except in such cases as may be prescribed by Congress, that the officers and agents of that government, when holding possession of property for public use in their official character, may be sued in any court of competent jurisdiction by the owner of such property, and such relief given against them as might be if their holding were not official."). This was so despite the fact that the officials had statutory power to claim and hold property for the sovereign and were attempting in good faith to exercise those powers and not merely advance their personal interests. *Id.*[18] This is what the *Lain* court meant when stating that "[o]ne who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee [and] . . . asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting on behalf of the state." 349 S.W.2d at 581.

In this type of suit, the plaintiff could obtain judgment against the government agents that the plaintiff, not the government, had superior title or right of possession in the property, as well as remedies against the agents that would have the practical effect of dispossessing the government

---

[18] *See also Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682, 696-97 (1949) (later characterizing *Lee* and its progeny as involving suits to restrain acts that, while within the government agent's statutory authority, constituted an unconstitutional taking of property without just compensation, and thus fell within "the constitutional exception to the doctrine of sovereign immunity"); *id.* at 718 (Frankfurter, J., dissenting) (describing the *Lee* line of cases as instead involving government agents that "had valid statutory authority but . . . determined erroneously the condition which had to exist before [they] could exercise it").

13

itself. *See Lain*, 349 S.W.2d at 580 (noting that the lower court judgment against state officials had awarded "title and possession . . . for plaintiffs, and defendants were enjoined from operating ferry boats over, or from going on the land"); *Lee*, 106 U.S. at 198, 216-23 (judgment dispossessed U.S. military of land it was using as a military garrison and national cemetery). Nonetheless, these remedies, in the theory of these cases, did not implicate sovereign immunity because the government was not a party to the dispute before the court and was not bound by the judgment. *See Stanley*, 19 S.W. at 353 (emphasizing that judgment against U.S. government official "on the question of title or right to possession would not bar the right of the United States to resort to any lawful remedy for the maintenance of any right it may have in the property," including a suit directly against the plaintiff to establish its title or, if unsuccessful, to purchase the property through voluntary sale or condemnation) (quoting *Lee*, 106 U.S. at 222); *see also Imperial Sugar Co.*, 179 S.W. at 89 (emphasizing that Texas trespass-to-try-title statute "requires that such suit shall be brought against the person in possession and, while any other person claiming title to the land may be made a party, the only necessary party is the person in possession"). This is what the *Lain* court meant when emphasizing that the judgment in that case—that superior title and right of possession was in the plaintiff—was "incidental" to the relief awarded against the government officials and "is not binding on the sovereign." 349 S.W.2d at 582. The net effect was that the plaintiff could obtain only possession of the property, but not title, and that possession was subject to any future actions the government was free to pursue to recover or condemn the property. *See Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) (O'Connor, J., concurring) (observing that under *Lee* and its progeny, "the Court made clear that the suits could proceed because no judgment would bind

14

the State. It was possible, the Court found, to distinguish between *possession* of the property and *title* to the property. A court could find that the officials had no right to remain in possession, thus conveying all the incidents of ownership to the plaintiff, while not formally divesting the State of its title.") (citations omitted).

Some of the conceptual underpinnings of *Lain* are not easily reconciled with contemporary Texas sovereign immunity jurisprudence.[19] Nonetheless, the Texas Supreme Court

[19] Among other things, *Lain*, drawing on *Lee*, emphasizes a formal distinction between suits against the sovereign as a party and suits against state officials. The courts have long since shifted their focus to whether the relief sought, even if nominally directed against state officials, is, in substance, relief against the sovereign. *See, e.g.*, *Larson*, 337 U.S. at 687-88. Relatedly, more recent Texas decisions have classified claims against state officials in their official capacity as claims against the sovereign. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) ("A suit against a state official in his official capacity 'is *not* a suit against the official personally, for the real party in interest is the [governmental] entity'. . . and 'is, in all respects other than name, . . . a suit against the entity.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *Porretto*, 251 S.W.3d at 711-12 (suggesting that *Lain* is "contrary to the general rule that in other circumstances, a suit against a governmental official in his official capacity is a suit against the State"). On the other hand, the Texas Supreme Court has also held that suits for declaratory or injunctive relief against a state official in his official capacity to compel him to comply with statutory or constitutional provisions are not "against the State," and do not implicate sovereign immunity, to the extent the plaintiff can (1) actually plead and prove that the official is acting without legal authority or failing to perform a purely ministerial act, and (2) the remedy sought does not have the purpose or effect of awarding relief against the State, such by imposing retrospective monetary relief or contractual liability. *See City of El Paso v. Heinrich*, ___ S.W. 3d ___, No. 06-0778, slip op. at 5-10 (Tex. May 1, 2009); *City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007). In *Heinrich*, the Texas Supreme Court reaffirmed the rule, derived ultimately from *Lee*, that "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments," at least where the plaintiff seeks to enforce such rights prospectively and not retrospectively. *Heinrich*, No. 06-0778, slip op. at 4-5, 6-10. This rule would arguably permit BP to sue Commissioner Patterson in his official capacity to compel return of land to which the State had no valid claim. A suit to recover property held by an agent of the State without a valid claim, as previously suggested, is in essence a suit to compel a state official to act within his statutory or constitutional authority (i.e., to refrain from holding property that belongs to the plaintiff and not the State). *See Larson*, 337 U.S. at 696-97; *id.* at 718 (Frankfurter, J.,

15

has never overruled *Lain*,[20] and it remains squarely controlling precedent that we are bound to apply here unless and until the high court tells us otherwise. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.—Austin 2004, no pet.).

*Lain* holds that when "the sovereign is made a party defendant to a suit for land," sovereign immunity bars the claim against it. *Lain*, 349 S.W.2d at 582. BP's trespass-to-try-title claim is a "suit for land"—it seeks to establish that BP has superior title and right of possession in the disputed property and recover possession on that basis. *See Koch v. Texas Gen. Land Office*, 273 S.W.3d 451, 455 (Tex. App.—Austin 2008, pet. filed) ("A 'suit for land' necessarily includes a trespass to try title claim."). BP does not purport to assert its trespass-to-try-title claim against the State or GLO as parties; to the extent it did, *Lain* requires us to hold that the claim is barred by sovereign immunity. 349 S.W.2d at 582; *see Koch*, 273 S.W.3d at 455 ("Sovereign immunity bars a 'suit for land' against the State or its agency"); *Texas Parks & Wildlife Dep't v. Callaway*,

dissenting). The remedy of compelling return of the land would appear to be prospective in nature. However, to the extent BP sought compensatory damages for the deprivation, or to impose contractual liability, sovereign immunity would bar the claim. *Heinrich*, No. 06-0778, slip op. at 5-10 & n.5; *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633-34 (Tex. App.—Austin 2007, pet. denied); *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 121-23 (Tex. App.—Austin 2007, no pet.).

[20] *See also Heinrich*, No. 06-0778, slip op. at 3-5, 6-10 (appearing to recognize the continued viability of *Lee* and its Texas progeny—in particular, *State v. Epperson*, 42 S.W.2d 228 (Tex. 1931)—in certain suits to recover property alleged to be unlawfully or wrongfully withheld by state officials); *W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 843 (Tex. 1958) (expressly declining to apply *Larson*'s narrowing of *Lee* to the proposition only that sovereign immunity did not bar a suit against a government official to restrain an appropriation of property constituting an unconstitutional taking without just compensation, *see Larson*, 337 U.S. at 696-98; reaffirming Texas' adherence to *Lee* "as that rule has been adopted and applied by the courts of this state in *Imperial Sugar Co v. Cabell* . . . and *State v. Epperson*, a limitation vigorously questioned in the dissenting opinion of Mr. Justice Frankfurter. We have no disposition to extend or broaden the rule of immunity in this state.").

971 S.W.2d 145, 152 (Tex. App.—Austin 1998, no pet.) ("A suit for title to land against the state or its agency cannot be maintained without legislative consent"). BP instead asserts its claim against Commissioner Patterson in his official capacity (as well as Patterson individually and Etoco). Under *Lain*, a suit for land against a state official in his official capacity is not barred by sovereign immunity unless and until it is shown that the State actually has a superior right of possession in the property. *See* 349 S.W.2d at 581-82.

We are unpersuaded by the State Defendants' argument that *Lain*'s holdings regarding state officials apply only to cases, like *Lain*, where the plaintiff claims title to property and the State does not.[21] The central holding of *Lain*, and of the "[w]ell-reasoned and authoritative decisions" on which it relies, is that sovereign immunity does not bar a plaintiff from suing a state official in possession of property the plaintiff claims to determine, as between those parties, which party has the superior title or right of possession, and to recover possession of the property from the official if the plaintiff prevails. Contrary to the State Defendants' assertions, this rationale does not turn on whether the state official is acting under color of a claim of title in the State or some other right of

---

[21] Our sister courts have not squarely addressed such a contention, though some have seemed to assume that *Lain* applies in cases where the State claims title. *See John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 921 S.W.2d 278, 281-82 (Tex. App.—Corpus Christi 1995, writ denied); *see also Bell v. State Dep't of Highways and Pub. Transp.*, 945 S.W.2d 292, 293-94 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (holding trespass-to-try-title suit by landowner against state agency barred by sovereign immunity where state and landowner asserted competing title claims, but implying that sovereign immunity would not have barred the suit, per *Lain*, had the suit been brought against individuals in their official capacities). *But see State v. Reimer*, 94 S.W.3d 103, 110 (Tex. App.—Amarillo 2002, no pet.) (in holding that sovereign immunity barred suit for land against "the State," relying in part on fact that "[i]n *Lain*, the State officials did not question the landowner's title" and the plaintiffs had not sufficiently pled allegations to support their assertions of a "boundary dispute").

possession. The cases on which the *Lain* court relied, for example, each involved government officials acting under color of a claim of title in the sovereign, and each case resolved that title dispute in order to determine the respective rights of the parties before the court. *See Lee*, 106 U.S. at 197-99; *Stanley*, 19 S.W. at 350; *Imperial Sugar Co.*, 179 S.W. at 84; *Whatley*, 31 S.W. at 60. The *Lain* court acknowledged that this rationale applied equally to state officials holding property under color of a claim of title in the State and those holding under color of some other right of possession. *See Lain*, 349 S.W.2d at 581 (explaining that sovereign immunity does not bar a suit to oust a "state official or employee . . . simply because he asserts a good faith but overzealous claim that *title* or right of possession is in the state and that he is acting on behalf of the state" and that "the mere assertion by pleading that the defendants claim *title* or right of possession as officials of the state and on behalf of the state, will not bar prosecution of the suit") (emphasis added). And, as previously explained, the *Lain* court squarely rejected the notion that the mere fact the State *claimed* a right to possession controlled whether sovereign immunity applied. Instead, the trial court, according to *Lain*, has not only subject-matter jurisdiction but the "duty . . . to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in." *Id*. at 582.

Commissioner Patterson, in his official capacity, has not shown that he is entitled to prevail on the issue of title or right of possession at this juncture. He has not presented evidence on that issue to the district court, either in a hearing or through the summary judgment-like procedures the supreme court has since authorized in *Miranda*. 133 S.W.3d at 227-28; *see Hendee*, 228 S.W.3d at 366-69. In this posture, we must accept as true BP's pleading allegations that it holds the disputed

18

property under a valid deed and that the encroachment of the San Jacinto River was due to subsidence caused by groundwater withdrawal by third parties. *Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555). The Commissioner has not challenged whether, as a matter of law, these facts, if proven, would establish title in BP. *See Lain*, 349 S.W.2d at 582 (discussing the plaintiff's burden in a trespass-to-try-title action); *Hendee*, 228 S.W.3d at 368-69. Instead, the Commissioner has relied on the mere fact that he has claimed title to the disputed property in the name of the State. In these circumstances, under *Lain*, the district court has subject-matter jurisdiction to adjudicate the merits of BP's trespass-to-try-title claim concerning the disputed property in order to decide the interwoven issues of whether sovereign immunity applies and whether BP is entitled to relief against the Commissioner. *See Lain*, 349 S.W.2d at 581-82.

Nor does BP's trespass-to-try-title claim implicate sovereign immunity by seeking a judgment that will establish its entitlement to recover the accrued royalties Etoco has paid into the court's registry, as the State Defendants contend. Assuming without deciding that such a recovery would constitute the sort of retrospective monetary relief that would implicate sovereign immunity,[22] BP's trespass-to-try-title claim cannot establish its right to the royalties. A determination that BP had superior title to or right of possession in the disputed property would be merely "incidental" to the court's determination of whether BP can recover possession of the property from what is in theory Commissioner Patterson only—and, as the *Lain* court emphasized, "is not binding on the sovereign." *See id.* at 582. Consequently, this title determination would not establish BP's title

---

[22] *See Heinrich*, No. 06-0778, slip op. at 4-5, 6-10; *Whiteaker*, 241 S.W.3d at 633-34; *Texas Logos, L.P.*, 241 S.W.3d at 121-23.

19

to the disputed property *as against the State* and would not resolve whether BP or the State is entitled to royalties under Etoco's leases. As BP acknowledges in its pleadings, it is the State "that intentionally granted oil, gas and mineral leases to Etoco for acreage that included the [disputed property]."

On this record, the district court did not err in overruling the State Defendants' plea to the jurisdiction as to BP's trespass-to-try-title claim against Commissioner Patterson in his official capacity. *See id.* at 581-82.

**Declaratory claims**

BP seeks the following declarations under the UDJA against the State Defendants:

- "A judgment declaring the parties' rights, status, and legal relations under [BP's] deed, [BP's] lease to Etoco, and the Commissioner's leases to Etoco, construing these instruments, finding [BP's] lease to Etoco valid, and finding the Commissioner's leases to Etoco invalid."

- "A judgment declaring the parties' rights under the leases to Etoco from [BP] and the Commissioner, including under which lease Etoco has the right to produce minerals."

- "A declaration of the mineral interests covered by Etoco's lease from [BP] and the mineral interests, if any, covered by Etoco's lease from the Commissioner."

- "A judgment declaring the boundary line between [BP's] property and the state's property."

In addition, BP pleads that the disputed property "is not owned by the state, nor does it belong to the state under the constitution and laws of this state, because it has become submerged solely through subsidence." On this basis, BP seeks under the UDJA a "judgment declaring that the Commissioner acted in excess of his statutory authority by leasing the [disputed property] to Etoco, that the

20

Commissioner had no legal or statutory authority to do so, and that the Commissioner has no statutory or legal authority to do so in the future."

The State Defendants urge that each of these declaratory claims "hinge[s] on the court first determining who owns the disputed property," and thus seeks to "try the State's title." We agree. Whether couched in terms of construing BP's deed, delineating the "boundary line" between BP's property and that of the State, or interpreting the Commissioner's authority, each of these requested declarations would have the effect of determining that BP, not the State, owns the disputed property. *See Koch*, 273 S.W.3d at 456. This is also true of the claims seeking to "construe" or "declare rights" under the competing oil and gas leases BP and the State have with Etoco. In the context of the present controversy over title to the disputed property, BP's requests for declarations concerning the legal effect of its lease with Etoco *vis-a-vis* its lease with the State necessarily place the State's title at issue. BP does not appear to contend otherwise.

With an exception not applicable here, a trespass-to-try-title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property. *See* Tex. Prop. Code Ann. § 22.001(a) (West 2000); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Koch*, 273 S.W.3d at 455.[23] However, the State Defendants have not argued that the exclusive nature of the trespass-to-try-title remedy restricts the district court's subject-matter jurisdiction over BP's declaratory claims. *Cf. id.* at 455-57. Instead, the State Defendants contend that sovereign immunity bars BP from

_____

[23] The exception is section 37.004(c) of the civil practice and remedies code, added in 2007, which permits a UDJA claim to determine the property boundary line between two adjoining properties, notwithstanding property code section 22.001(a), where this is "the sole issue concerning title to real property." Act of June 15, 2007, 80th Leg., R.S., ch. 305, 2007 Tex. Gen. Laws 581, 581 (codified at Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c)); *see* Tex. Prop. Code Ann. § 22.001(a).

21

obtaining the particular declarations they seek. Again invoking *Lain*, the State Defendants urge that because each declaratory claim seeks to "try the State's title,"sovereign immunity bars the claims absent legislative consent.

BP responds by invoking general principles that govern the availability of UDJA actions against state officials and entities. The UDJA authorizes:

> [a] person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute [or] contract" to "have determined any question of construction or validity arising under the instrument, statute, [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). BP also cites the principle that sovereign immunity does not bar certain UDJA claims against state officials and agencies to construe their statutory authority and determine the plaintiff's rights and status under the statutes. *See City of El Paso v. Heinrich*, ___ S.W. 3d ___, No. 06-0778, slip op. at 9 n.6 (Tex. May 1, 2009) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697-98 (Tex. 2003); *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)); *Texas Nat. Resource Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). BP insists that, in light of these principles, sovereign immunity does not bar the above UDJA claims. We disagree.

The UDJA is not a general waiver of sovereign immunity, it "does not enlarge a trial court's jurisdiction, and litigant's request for declaratory relief does not alter a suit's underlying nature." *Heinrich*, No. 06-0778, slip op. at 3; *IT-Davy*, 74 S.W.3d at 855. For this reason, the UDJA cannot be used as a vehicle to obtain declarations having the effect of establishing a right to

22

relief against the State for which sovereign immunity has not been waived. *See City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) ("'private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim'" and "if the sole purpose of such a declaration [regarding a governmental body's statutory authority] is to obtain a money judgment, immunity is not waived") (quoting *IT-Davy*, 74 S.W.3d at 856); *Koch*, 273 S.W.3d at 455 (citing, as examples, UDJA claims that would establish the State's contractual or tort liability); *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 119-23 (Tex. App.—Austin 2007, no pet.) (UDJA claim challenging whether agency violated statutory authority in awarding contract implicated sovereign immunity by seeking to invalidate contract previously executed on State's behalf).

Under *Lain*, when "the sovereign is made a party defendant to a suit for land, without legislative consent," the claim against the sovereign is considered to be barred by sovereign immunity. *Lain*, 349 S.W.2d at 582. Consequently, sovereign immunity bars BP from suing the State of Texas and the GLO under the UDJA to obtain declarations to the effect that BP, and not the State, has title to the disputed property. This Court, like several of our sister courts, reached the same conclusion in similar cases. *Koch*, 273 S.W.3d at 455-57 (UDJA claims against the GLO were "in reality, claims to determine title to the limestone on [plaintiff's] property" and thus were barred by sovereign immunity absent legislative consent); *see Veterans Land Bd. v. Lesley*, ___ S.W.3d ___, No. 11-07-00034-CV, 2009 Tex. App. LEXIS 382, at *58-61 (Tex. App.—Eastland Jan. 22, 2009, no pet. h.) (UDJA claims by mineral owners against surface owners (which included the VLB) regarding ownership of executive rights, enforceability of deed restrictions on development of

minerals, and for reformation of deeds held barred by sovereign immunity because they implicated the VLB's title and rights in the surface estate); *State v. Beeson*, 232 S.W.3d 265, 271-72 (Tex. App.—Eastland 2007, pet. abated) (UDJA claim to establish an easement in property held barred by sovereign immunity because it was asserted against the State as a defendant); *Bell v. State Dep't of Highways and Pub. Transp.*, 945 S.W.2d 292, 293-94 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (UDJA claim to establish title in land held barred by sovereign immunity where "[t]he only defendants Bell has sued are sovereigns, the State of Texas and the State Department of Highways and Public Transportation").

We similarly hold that sovereign immunity bars BP from asserting these UDJA claims against Commissioner Patterson in his official capacity. Although dicta in *Beeson* and *Bell* may imply otherwise, *Lain*'s rationale for distinguishing between suits for land against the sovereign as a party and suits against state officials in their official capacities in the context of trespass-to-try-title claims does not extend to such claims when brought under the UDJA against state officials in their official capacities. The linchpin of this distinction in *Lain* and its antecedents, as previously explained, was that the trespass-to-try-title claim against the official, whether asserted against him individually or in his official capacity, could yield no more than a judgment entitling the plaintiff to possession based on an "incidental" title determination that "is not binding on the sovereign." 349 S.W.2d at 582. By contrast, a UDJA claim against a state official in his official capacity seeks a declaration to which the sovereign, through its agent, is bound. *See IT-Davy*, 74 S.W.3d at 855; *see also Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007). Consequently, BP's UDJA claims against Commissioner Patterson in his official capacity are barred by sovereign

24

immunity in the same way as are those claims against the State and GLO as parties.[24] The district court erred in denying the State Defendants' plea to the jurisdiction as to these claims.

For the same reasons, the district court lacks subject-matter jurisdiction over BP's claim under section 2001.038 of the APA. Section 2001.038 creates a cause of action for—and waives sovereign immunity against—a claim for declaratory judgment against a state agency concerning "the validity or applicability of a rule." Tex. Gov't Code Ann. § 2001.028(a), (c) (West 2008). BP attempts to style its title claim as a section 2001.038 claim for a declaration that the GLO's rules prescribing the procedures for leasing "[o]il and gas underlying state lands" do not "apply" to the disputed property *because BP, not the State, owns it.*[25] The disputed issue of whether BP actually has title to the property goes to BP's standing to assert a rule "applicability" challenge under section 2001.038. Section 2001.038 confers standing on a plaintiff where "the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right

---

[24] We thus need not address whether these claims implicate sovereign immunity through their implications regarding ownership of the accrued royalties Etoco paid into the court's registry.

[25] BP pleads:

> The application of Title 31, Chapter 9 of the Texas Administrative Code ("31 TAC Ch. 9 ") to the [disputed property] interferes with and impairs [BP's] property and other legal rights. These rules do not apply to [BP's] property. More specifically, the Commissioner and Board may only grant oil, gas, and mineral leases for property belonging to the state. Despite this, the Commissioner granted oil, gas, and mineral leases for the [disputed property] that belong to [BP], and the Commissioner continues to assert ownership of such minerals.

*See generally* 31 Tex. Admin. Code § 9.21 (2009) (GLO's "Leasing Guide" for leasing "[o]il and gas underlying state lands"). BP prays for "[a] judgment declaring that the actions of the Commissioner in applying the provisions of 31 TAC ch. 9, including 31 TAC §9.21 *et seq.* to the [disputed property] interferes with and impairs the legal rights of [BP], and that those rules are inapplicable to [the disputed property]."

or privilege of the plaintiff." *Id.* § 2001.028(a). Thus, BP's standing depends on whether, in fact, it and not the State has the "legal right or privilege" of title in the disputed property—a determination that sovereign immunity, as applied in *Lain*, bars BP from obtaining, absent legislative consent. *See* 349 S.W.2d at 581-82. Consequently, the district court has subject-matter jurisdiction over BP's section 2001.038 claim only if the legislature intended through that statute to waive sovereign immunity as to the antecedent title determination necessary to establish BP's standing. We cannot conclude that it did.

When determining whether the legislature intended to waive sovereign immunity through a statute, we are bound to comply with the legislature's mandate that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2008); *see State v. Oakley*, 227 S.W.3d 58, 62 (Tex. 2007). As this Court has previously observed, "The plain language of section 2001.038 confers jurisdiction upon a district court to resolve two issues: (1) whether a rule is *valid*, and/or (2) whether a rule is *applicable*." *Texas Dept. of Transp. v. City of Sunset Valley*, 92 S.W.3d 540, 549 (Tex. App.—Austin 2002) (holding that section 2001.038 did not confer jurisdiction to determine whether an agency has complied with its rule), *rev'd on other grounds*, 146 S.W.3d 637 (Tex. 2004). As a result, the remedy afforded by section 2001.038 is limited to declarations concerning the *rule*—that the rule is null and void, in the case of a validity challenge, or that the rule did not impose a right, duty, or obligation on the plaintiff, in the case of an applicability challenge—and does not in itself provide relief with respect to the underlying statutes or other law. Although section 2001.038 requires that the plaintiff allege and prove that the rule or its threatened

26

application interferes with or impairs "a legal right or privilege" in order to have standing to pursue these remedies, it does not speak to whether or how the court is to resolve whether that "right or privilege" actually exists if that issue is disputed, much less purport to waive sovereign immunity if such immunity would otherwise bar the court from making that determination. We cannot conclude that the legislature, by providing section 2001.038's limited waiver of sovereign immunity to permit certain challenges to agency rules, clearly and unambiguously manifested its intent to waive immunity as to antecedent title issues going to the plaintiff's standing to assert such a claim. Accordingly, the district court erred in denying the State Defendants' plea to the jurisdiction as to BP's section 2001.038 claim.

These jurisdictional defects in BP's declaratory claims cannot be cured by repleading. As long as *Lain* remains the law, sovereign immunity bars BP from asserting a suit for land via the UDJA against the State of Texas, the GLO, or Commissioner Patterson in his official capacity without legislative consent, however BP might plead the claim. *See Koseoglu*, 233 S.W.3d at 839-40. Similarly, BP cannot plead around the limited scope of section 2001.038's waiver. Both claims, therefore, must be dismissed for want of subject-matter jurisdiction. *See id*.

**Constitutional takings claim**

BP also seeks a declaration that "the Commissioner's and the GLO's actions in leasing and in asserting rights under the [disputed property] constitute an impermissible taking under Article I, Sections 17 and 19 of the Texas Constitution and in violation of the Fifth and Fourteenth Amendments of the United States Constitution." The State Defendants concede that they have "no sovereign immunity to a valid takings claim" under the Texas or U.S. constitutions.

27

*See Koch*, 273 S.W.3d at 457 (noting that "[t]he Texas Constitution itself waives immunity for the taking, damage, or destruction of property for public use") (citing *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980)).  However, the State Defendants dispute whether BP has stated a valid takings claim.

To establish a takings claim under the federal or state constitution, BP must prove (1) the State Defendants intentionally performed certain acts; (2) that resulted in a "taking" of property; and (3) for public use.  *See Koch*, 273 S.W.3d at 458 (citing *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)).  BP pleads that the State Defendants "intentionally granted oil, gas, and mineral leases" to Etoco of property BP alleges it owns "for public use, in that the royalty to be received is for the benefit of public education."  The State Defendants, however, argue that BP's pleadings and jurisdictional evidence negate the intent element of its takings claim by demonstrating that the State asserted rights to and leased the disputed property under color of a claim of title.  In the State Defendants' view, they cannot have the "kind of intent essential to a takings claim" when acting under color of a claim of title because "[i]n claiming authority over the land and minerals it believes the State owns, [it] does not intend to convert another's private property to public use through an exercise of sovereignty" but is instead acting "in the role of a self-interested landowner."

In support of this view, the State Defendants advocate an expansion of concepts recognized by the Texas Supreme Court when takings claims have been alleged in the context of contract disputes.  The supreme court has reasoned that when the State withholds property in a contractual context, it lacks the necessary intent to commit a taking because "it is acting within

28

a color of right under the contract and not under its eminent domain powers." *Little-Tex Insulation Co.*, 39 S.W.3d at 598-99; *see Holland*, 221 S.W.3d at 643-44. This line of cases rests on the concept that the State may wear two hats—one as a contracting party, "akin to a private citizen," and another as sovereign. *Little-Tex Insulation Co.*, 39 S.W.3d at 599. The State Defendants urge this reasoning should also apply whenever it claims authority over real property "it believes the State owns" because in such a case it acts only in the capacity of a "self-interested landowner," not in its sovereign capacity, and cannot have the requisite intent to take the property in a constitutional sense.

This Court recently rejected the same argument in *Koch*. 273 S.W.3d at 457-60. Koch was the surface owner of a piece of real property in which the GLO owned the mineral estate. The GLO removed limestone from the property without compensating Koch, claiming that the limestone was part of the mineral estate. Koch sued for declaratory judgments that the mineral estate did not include the limestone and that the GLO's removal of the limestone was a taking under the state and federal constitutions. Based on essentially the same arguments it and the other State Defendants advocate here, the GLO contended that Koch could not assert a takings claim because the agency could not intend to take the property in a constitutional sense where it was acting under a claim of title. In concluding otherwise, we reasoned:

> We are not persuaded that the State's subjective belief regarding its title to property, by itself, changes or dictates the capacity in which the State acts. The GLO does not identify any authority to support its view that when the State acts in the role of a self-interested landowner—even though an actual dispute exists as to whether it is in fact the landowner—the State acts within a "color of right" in the same way as when it acts in its contractual capacity. We have found no authority holding that the State acts akin to a private citizen or other than as sovereign in such a circumstance. The analysis might be different if it is determined that the State is, in fact, the property owner. However, absent such a determination, the State's intentional act of

29

taking property for public use is an exercise of its eminent domain powers. The power of eminent domain is a sovereign power. . . . When a plaintiff alleges a state taking of property and title to that property is in dispute, the State cannot evade its constitutional obligations merely by asserting that it "believes" it is acting as landowner rather than as sovereign regardless of whether that belief is, in fact, accurate. Otherwise, the State would be in the position of unilaterally determining the outcome of takings disputes simply by declaring a subjective belief—whether right or wrong—that it thought it owned the property. Takings jurisprudence does not work this way.

*Id.* at 458-59; *see also id.* at 460 ("As the Texas Supreme Court has observed, if the government could claim immunity for a taking by simply asserting title, then it need never legally condemn land—it 'could simply appropriate it, and the landowner would be entitled to no compensation unless the Legislature granted him permission to sue.'") (quoting *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Griffin*, 341 S.W.2d at 153)). We further observed that "[t]he GLO's position on the takings claim is, at its essence, an attempt to add an intent standard regarding the ownership of the property alleged to be taken." *Id.* at 460. We found no support for the application of such a standard, at least where the intentional act complained of was the GLO's actual assertion of dominion over the property at issue. *Id.* at 459-60. To the contrary, we held that "[w]hether the GLO acted in good faith in physically removing the limestone or believed that its taking of the limestone was not a 'taking' of property as a constitutional matter, has no impact on whether the State's act in taking the limestone was intentional" and that "[s]uch a belief—whether or not in good faith—also should not impact whether the State's act of physical taking was a compensable taking under the constitution." *Id.*

*Koch* governs our disposition of the State Defendants' arguments regarding the intent element of BP's takings claims. BP has alleged that the State Defendants intentionally asserted

30

dominion over its property and granted oil, gas, and mineral leases on it. In the current procedural posture, we must presume the truth of these allegations. Whether or not the State Defendants had a good faith belief that they actually owned the disputed property, or that its taking of the property was not a constitutional taking, as in *Koch*, "has no impact on whether the State's act . . . was intentional." *Id.*

The State Defendants also suggest that BP has failed to state a valid takings claim because it has not prayed for compensation as the remedy for the alleged taking, but a declaration under the UDJA.[26] As we explained in *Koch*, a takings claim is distinguished from a trespass-to-try-title claim or other "suit for land" by the remedy: "[w]hile one suit quiets title and possession of the property, the other allows only for just compensation for the property taken or used—the prevailing party does not regain use of land lost to the public's use, or win possession of it." *Id.* at 457 (quoting *Porretto*, 251 S.W.3d at 708). Although not requesting compensation at this juncture, BP nonetheless seeks a remedy characteristic of a takings claim: a declaration that "the Commissioner's and the GLO's actions in leasing and in asserting rights under the [disputed property] constitute an impermissible taking," i.e., they have taken the property for public use without paying just compensation. The import of this declaration would be that BP is entitled to just compensation for property the State Defendants have taken from them, not that BP presently has title to the property and is entitled to possession. Sovereign immunity does not bar BP's claim. *See Hendee*, 228 S.W.3d at 379 n.31 (where trial court had subject-matter jurisdiction over taxpayer

---

[26] The State Defendants do not otherwise question whether BP can use the UDJA in this manner, and we express no opinion on that issue.

31

suits to enjoin illegal expenditures, it necessarily had jurisdiction to issue declaration regarding "component issue" of whether the challenged expenditures were illegal); *see also Koch*, 273 S.W.3d at 457 (observing that Koch had asserted her "constitutional takings claim via a claim for declaratory relief").[27] *But see State v. Allodial Ltd. P'ship*, ___ S.W.3d ___, No. 05-07-01308-CV, 2009 Tex. App. LEXIS 2164, at *12 (Tex. App.—Dallas Mar. 31, 2009, no pet. h.) (reasoning that request for declaratory judgment on takings claim "amount[s] to a claim for money damages" and was, therefore, barred by sovereign immunity).

We hold that the district court did not err in overruling the State's plea to the jurisdiction as to BP's constitutional takings claim.

**Statutory takings claim**

PRPRPA authorizes a "private real property owner" to seek a judgment or order finding that a "governmental action" constitutes a "taking" as defined in the act. *See* Tex. Gov't Code Ann. §§ 2007.021-.23 (West 2008); *see also id.* §§ 2007.002(2), (4), (5) (defining "owner," "private real property," and "taking" under the act), .003 (defining "governmental actions" to which act applies and that are excluded). If the "private real property owner" succeeds in obtaining such a finding, he is entitled to an order that the governmental entity in question rescind the governmental action, or the part of the governmental action resulting in the taking. *See id.* §§ 2007.023(b), .024(a).

---

[27] Koch sought a declaration that the GLO's removal of limestone violated the takings provisions of the state and federal constitution, as well as a declaration that any monies obtained by the State for such limestone must be returned to Koch. *Koch v. Texas Gen. Land Office*, 273 S.W.3d 451, 457 (Tex. App.—Austin 2008, pet. filed). Although BP has not requested an explicit declaration that it is entitled to just compensation for the property the State Defendants have taken from it, this is implicit in the declaration BP seeks.

In response to such an order, the governmental entity has the option, in lieu of rescission, of paying damages as compensation to the prevailing private real property owner for the taking. *See id.* § 2007.024(c)-(f). PRPRPA waives sovereign immunity "to the extent of liability created by this chapter" and to the extent the governmental entity elects to pay compensation in response to a rescission order. *See id.* §§ 2007.004(a), .024(c).[28]

PRPRPA sets forth two means through which a "private real property owner" can seek a finding that a "governmental action" constitutes a "taking" under the act: (1) a "suit . . . to determine whether the governmental action of a political subdivision results in a taking under this chapter"; or (2) an APA "contested case with a state agency to determine whether a governmental action of the agency results in a taking under this chapter." *Id.* §§ 2007.021 (suit), .022 (administrative proceeding). The former "must be filed in a district court in the county in which the private real property owner's affected property is located," *id.* § 2007.021(a), while the latter is filed with the state agency whose "governmental action" is alleged to have constituted a "taking." *See id.* § 2007.022(a). In each case, the proceeding must be filed with its appropriate tribunal "not later than the 180th day after the date the private real property owner knew or should have known that the governmental action restricted or limited the owner's right in the private real property." *Id.* §§ 2007.021(b), .022(b). Furthermore, a person "who has exhausted all administrative remedies available within the state agency and is aggrieved by a final decision or order in a contested case

_____

[28] This remedy and others provided under PRPRPA is not exclusive, but cumulative of other procedures and remedies provided by law. Tex. Gov't Code Ann. § 2007.006(a).

filed under Section 2007.22 is entitled to judicial review" generally governed by the APA, although such review is by trial de novo. *Id.* § 2007.025(b).

BP pled that "[t]he action of the GLO in leasing the [disputed property] to Etoco is a governmental action under [PRPRPA] that constitutes a taking through the enforcement of the rules adopted by the GLO." It prayed for "[a] judgment invalidating the oil and gas leases to Etoco under § 2007.023 of the Texas Government Code." The State Defendants argue that BP failed to allege a claim within PRPRPA's waiver because "the use of the Property Rights Act is limited to numerous requirements in the statute that BP did not fulfill." We agree that BP's pleadings do not affirmatively demonstrate that it has met the statutory requirements for bringing suit under PRPRPA. BP's pleadings do not demonstrate that it has exhausted its administrative remedies by timely pursuing a contested case to challenge the actions of a state agency, the prerequisite for filing a suit for judicial review concerning such actions. *See id.* §§ 2007.022, .025(b). Similarly, BP's pleadings do not demonstrate that it filed its suit within the requisite time period in the "district court in the county in which the private real property owner's affected property is located," as would be necessary to bring a suit challenging an action of a "political subdivision." *Id.* § 2007.021.

In its appellate brief, BP does not assert any arguments in response to the State Defendants' contentions that it has failed to affirmatively demonstrate that it complied with the requirements for bringing suit under PRPRPA. We need not decide whether BP was required to pursue its PRPRPA claim through a suit under section 2007.021 or a section 2007.022 contested case followed by judicial review because its pleadings fail to affirmatively demonstrate that it met the

statutory requirements for obtaining either remedy.[29]  Consequently, the district court erred in denying the State Defendants' plea to the jurisdiction as to BP's claim under PRPRPA.

Based on this record, we also conclude that these jurisdictional defects are incurable. Assuming section 2007.022 applies, BP's counsel admitted during the hearing on the plea to the jurisdiction that "[w]e did not file a contested case action before the agency.  We're not asserting that we did."[30]  As for bringing a suit against a "political subdivision" under section 2007.021, BP affirmatively pleads that the disputed property is located in Harris County and that it, contrary to that section, filed its suit in Travis County.  Under these circumstances, the appropriate remedy is to dismiss BP's PRPRPA claim for want of subject-matter jurisdiction without an opportunity to replead.  *See Koseoglu*, 233 S.W.3d at 839-40; *Miranda*, 133 S.W.3d at 227.

**CONCLUSION**

We affirm the portions of the district court's order denying the State Defendants' plea to the jurisdiction as to BP's trespass-to-try title claim against Commissioner Patterson in his official capacity and BP's constitutional takings claim against the State Defendants.  However,

---

[29] The State Defendants have advanced somewhat inconsistent positions in the district court and on appeal as to which of these alternative paths to relief BP was required to pursue in this case. In the district court, the State Defendants argued that BP's claim was governed exclusively by section 2007.022 and that BP, consequently, had been required to pursue a contested case in the GLO before filing its suit.  On appeal, the State Defendants complain more generally that BP failed to satisfy "numerous requirements" for bringing suit, citing the example of section 2007.021's requirement that a "private real property owner" bring suit against a "political subdivision" in the county where the property at issue is located.

[30] Instead, BP took the position that section 2007.022 provided an administrative proceeding that was merely "discretionary" or optional before filing suit against an agency under PRPRPA.  As noted, BP does not assert this argument on appeal, and we conclude that PRPRPA, as we have summarized above, does not support such an interpretation.

we reverse the portions of the order denying the plea as to BP's other UDJA claims, its declaratory claim under the APA, and its claim under PRPRPA, and render judgment dismissing those claims for want of subject-matter jurisdiction.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed in part; Dismissed in part; Reversed and Rendered in part

Filed:   May 8, 2009