02-09-395-CV














 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-09-00395-CV

 


 
 
 UNIVERSITY OF NORTH TEXAS
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 CITY OF DENTON, TEXAS, ACTING BY AND THROUGH ITS
 ELECTRIC UTILITY DEPARTMENT, DENTON MUNICIPAL ELECTRIC
 
 
  
 
 
 
 
 APPELLEE
 
 


 

------------

 

FROM THE 158TH DISTRICT COURT OF DENTON
COUNTY

 

------------

 

OPINION

 

------------

          Appellant University of North Texas (UNT)
appeals the trial court’s order granting the motion for summary judgment of appellee City of Denton, Texas, acting by and through its electric
utility department, Denton Municipal Electric (the City).  In UNT’s opening brief, it contended in two
issues that the trial court’s order is improper because the court wrongly
concluded that section 36.351 of the utilities code, which states that
municipally owned utilities must give universities a 20% discount on the price
of utility base rates, has expired and does not apply to the City’s
relationship with UNT.  In UNT’s reply
brief, it argued that the City’s lawsuit is barred by sovereign immunity.  Because we agree that immunity precludes the
suit, we reverse the trial court’s judgment and remand this case to the trial
court to afford the City an opportunity to amend its pleadings.

Brief Legislative Background

          As part of the Public Utility
Regulatory Act of 1995, the Texas Legislature passed a provision requiring each
municipally owned utility to discount electric service provided to a university.[1]  Act of May 27, 1995, 74th
Leg., R.S., ch. 765,
§ 2.20, 1995 Tex. Gen. Laws 3972, 4007 (amended 1997) (current version at Tex.
Util. Code Ann. § 36.351 (Vernon 2007)).  The provision was amended and codified as
section 36.351 in 1997.  Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, sec. 36.351, 1997 Tex. Gen Laws 713, 784
(hereinafter section 36.351).  Section 36.351, which has not been expressly
repealed or amended since 1997, states in part,

          (a) Notwithstanding
any other provision of this title, each electric utility and municipally owned
utility shall discount charges for electric service provided to a facility of a
four-year state university, upper-level institution, Texas State Technical College,
or college.

          (b)
The discount is a 20-percent reduction of the utility’s base rates that would
otherwise be paid under the applicable tariffed rate.

Tex. Util. Code
Ann. § 36.351.

          

          In 1999, the legislature passed Senate
Bill 7, which partially deregulated Texas’s electricity industry.[2]  Act of May 27, 1999, 76th Leg.,
R.S., ch. 405, 1999 Tex.
Gen. Laws 2543, 2543–2625; see In re
Entergy Corp., 142 S.W.3d 316, 319 (Tex. 2004) (orig. proceeding) (stating
that Senate Bill 7 “dramatically altered the electric utility landscape in
Texas by requiring the unbundling of generation, transmission, and distribution
services” and “called for retail competition to begin” in 2002); BP Chems., Inc. v.
AEP Tex. Cent. Co., 198 S.W.3d
449, 451 (Tex. App.—Corpus Christi 2006, no pet.) (explaining some of the effects of Senate Bill 7); State v. Pub. Util. Comm’n, 110 S.W.3d 580, 583 (Tex. App.—Austin 2003, no pet.)
(same).  An
analysis issued during Senate Bill 7’s legislative process states in part,

          BACKGROUND:  The state began regulating the electric
utility industry in 1975 when lawmakers created the Public Utility Commission
(PUC) to set standards and rates for both electric and local telephone service.
. . .

          The
electric utility industry is a $20-billion-a-year industry in Texas, with three
general types of utilities: 

·       
Investor-owned utilities, private companies owned
by shareholders and regulated by the PUC, sell electricity to about 70 percent
of all customers in Texas. . . .

·       
Rural electric cooperatives are owned by the
communities they serve. . . .

 

·       
Municipal utilities are owned by cities.  A municipal utility board is either elected or
appointed by elected officials to set rates and make investments in
infrastructure.  Texas has 75 municipally
owned utilities.

          . .
. .

          . .
.  [Senate Bill] 7 would restructure the
electric utility industry in Texas to provide retail competition and customer
choice beginning January 1, 2002, for all customers now served by
investor-owned utilities.  

House Comm. on State Affairs,
Bill Analysis, Tex. S.B. 7, 76th Leg, R.S. (1999).

 

          Section 63 of Senate Bill 7 (hereinafter
section 63), an uncodified provision, states,

          SECTION 63.  Notwithstanding
any other provision of this Act or Title 2, Utilities Code,[[3]]
any person or entity that provides electric service to a four-year state
university . . . as provided by Section 36.351, Utilities Code, on December 31,
2001, shall continue to offer electric service to a four-year state university
. . . as provided by Section 36.351, Utilities Code, until September 1, 2007,
at a total rate that is no higher than the rate applicable to the university .
. . on December 31, 2001.  The rate
applicable to a four-year state university . . . as provided by Section 36.351,
Utilities Code, on December 31, 2001, shall be based on the rates provided for
or described in Section 36.351, Utilities Code. . . .  As used in this section, “person or entity”
includes an electric utility, affiliated retail electric provider, municipal
corporation, cooperative corporation, or river authority.

Act
of May 27, 1999, 76th Leg., R.S., ch. 405, § 63, 1999 Tex. Gen. Laws 2543, 2625.

The Relationship Between the Parties and the History of Their Dispute

          The City operates Denton Municipal
Electric (DME), which is a municipally owned utility.[4]  UNT is one of DME’s customers.[5]  Beginning in September 1995, DME gave UNT a 20%
discount from DME’s base rates; the discount was “subsidized by all
other . . . ratepayers.”  On
September 1, 2007, DME, under the direction of ordinances passed by the Denton
City Council, discontinued the discount. 
DME had notified UNT that it would remove the discount by a letter sent in
2004.

          UNT started disputing DME’s
electricity billings in September 2007 because it claimed it was still entitled
to the discount; “[d]espite repeated demands” by DME,
the university withheld 20% of the amount of each monthly billing.  According to DME, as of October 2008, by
withholding 20% of each bill, UNT was delinquent in its payments for electric
base rate service in the amount of $753,845.53.

          In February 2008, the City sued UNT.[6]  The City’s petition sought, under chapter
thirty-seven of the civil practice and remedies code, the Uniform Declaratory
Judgments Act (UDJA), a declaration that DME is not required to provide UNT the
discount.[7]  The petition also requested recovery for
underpayments under chapter 2251 of the government code,[8]
interest, and attorney’s fees.  The City
contended that section 63 caused section 36.351’s discount to expire on September
1, 2007 (even though the legislature did not expressly repeal section 36.351) and
that section 105.203 of the education code also negated any affirmative duty by
the City to provide further discounts.[9]  UNT answered the suit by asserting a general
denial and the defense of sovereign immunity, among other defenses.

          The City filed a motion for summary
judgment on all of its claims.  It asserted
that UNT owed DME unpaid balances.  UNT
also sought summary judgment on its interpretation of the relevant statutes (it
did not raise sovereign immunity in its motion).  The university attached documents from
disputes before the Public Utility Commission; the documents showed that the
commission had endorsed UNT’s position that section 36.351’s discount had not
expired because of section 63.

          The trial court granted judgment for
the City on its declaratory judgment claim. 
It found that the City was “entitled to judgment as a matter of law that
as of September 1, 2007, DME was no longer obligated to provide UNT a 20% base
rate discount for electrical services” because of both section 63 of Senate
Bill 7 and section 105.203 of the education code.  The trial court also awarded up to $45,500 in
attorney’s fees to the City.

          In anticipation of an appeal by UNT,
the parties entered into a settlement agreement that contained the following
terms, among others:

·       
the City would nonsuit
all claims other than its declaratory judgment claim;

 

·       
beginning with the May 2009 bill, UNT would fully
pay each of DME’s electric bills, but until UNT’s appeal is resolved, it may
keep the  $1,071,245.49 it had withheld
from the September 2007 through April 2009 bills;

 

·       
if the appeal is resolved in UNT’s favor, it can
keep the $1,071,245.49, and it will be entitled to a credit against future
electric bills for the additional 20% (plus interest) it paid starting with the
May 2009 bill;

 

·       
if the appeal is resolved in the City’s favor, UNT
must pay the $1,071,245.49 (plus interest) to the City;

 

·       
after the resolution of the appeal, the winning
party must pay the losing party’s attorney’s fees.

 

In
accordance with the agreement, on the same day that the court entered its
judgment, the City nonsuited all claims except for
its declaratory judgment claim.[10]  UNT filed notice of this appeal.

Sovereign Immunity

          Because sovereign
immunity from suit affects subject matter jurisdiction, it may be raised for
the first time on appeal.  See Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 374 (Tex. 2006)
(op. on reh’g); Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004); Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d
440, 443–44 (Tex. 1993) (explaining that subject matter jurisdiction is
“essential to the authority of a court to decide a case” and “is never presumed
and cannot be waived”).  As we have
explained, 

          The Texas Supreme Court has long
recognized that sovereign immunity protects the State of Texas, its agencies,
and its officials from lawsuits for damages, absent legislative consent to sue.
Immunity from suit bars a suit against the State unless the State has expressly
consented to the suit.  Legislative
consent to suit must be by clear and unambiguous language, in either a statute
or by other express legislative permission.  Absent the State’s consent to suit, a trial
court lacks subject matter jurisdiction over a suit against a governmental
entity.[[11]]

Dallas-Fort Worth
Int’l. Airport Bd. v. Ryan,
52 S.W.3d 426, 428 (Tex. App.—Fort Worth 2001, no pet.) (footnotes and citations omitted); see Tex. Dep’t of Criminal Justice v.
McBride, 317 S.W.3d 731, 732 (Tex. 2010) (”Sovereign immunity protects the
State (and various divisions of state government) from lawsuits for money
damages.”); Tex. Dep’t of Transp. v. York,
284 S.W.3d 844, 846 (Tex. 2009); see also
Dir. of Dep’t of Agric. & Env’t v. Printing
Indus. Ass’n of Tex., 600 S.W.2d 264, 265 (Tex. 1980) (indicating that immunity
generally applies to a suit brought to control state action even when it does
not subject the state to financial liability); Creedmoor-Maha Water Supply Corp. v. Tex. Comm’n on Envtl. Quality, 307 S.W.3d 505, 515 (Tex.
App.—Austin 2010, no pet.) (same).

          Sovereign immunity
assists governmental functions by requiring tax resources to be used for their
intended purposes rather than defending lawsuits.  Reata Constr. Corp., 197 S.W.3d at 375.  In other words, the “Legislature is better
suited than the courts to weigh the conflicting public policies associated with
waiving immunity and exposing the government to increased liability, the burden
of which the general public must ultimately bear.”  Tex.
Natural Res. Conservation Comm’n v. IT-Davy, 74
S.W.3d 849, 854 (Tex. 2002) (plurality op.); see also Tex. Gov’t Code Ann. § 311.034
(Vernon Supp. 2010) (“In order to preserve the legislature’s interest in
managing state fiscal matters through the appropriations process, a statute
shall not be construed as a waiver of sovereign immunity unless the waiver is
effected by clear and unambiguous language.”). UNT generally enjoys sovereign
immunity.  See Nat’l Sports &
Spirit, Inc. v. Univ. of N. Tex., 117 S.W.3d 76, 81 (Tex. App.—Fort Worth
2003, no pet.) (“As an agency of the State, UNT enjoys the protection afforded
by this sovereign immunity, except in instances where immunity has been
expressly waived by statute.”).

          In some circumstances, Texas
law allows courts to declare rights, status, and other legal relations whether
or not further relief is or could be claimed. 
Tex. Civ. Prac. &
Rem. Code Ann. § 37.003(a); see Chenault v. Phillips, 914 S.W.2d 140, 141 (Tex. 1996)
(explaining that the UDJA is not a grant of jurisdiction but merely a procedural
device for deciding cases already within a court’s jurisdiction).  Specifically, a person “whose rights . . . are
affected by a statute, municipal ordinance, contract, or franchise may have
determined any question of construction or validity arising under the
instrument, statute, ordinance, contract, or franchise and obtain a declaration
of rights, status, or other legal relations thereunder.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).  “When declaratory relief is sought, all
persons who have or claim any interest that would be affected by the
declaration must be made parties.”  Id. § 37.006(a).

          Some suits against the government
for declaratory relief do not implicate sovereign immunity.  See,
e.g., Tex. Educ. Agency v. Leeper, 893 S.W.2d 432, 433–40,
446 (Tex. 1994) (holding that the State’s immunity was waived when class-action
plaintiffs sought a declaration concerning whether a statutory private school
exemption to public school attendance requirements applied to home-schooled
children); Hawkins v. El Paso First
Health Plans, Inc., 214 S.W.3d 709, 711, 715–18 (Tex. App.—Austin 2007,
pet. denied) (holding that the Texas Health and Human Services Commission did
not have immunity in a declaratory judgment suit about whether the commission was
responsible for disenrolling certain newborns from
managed care plans); Tex. Dep’t of Ins.,
Div. of Workers’ Comp. v. Lumbermens Mut. Cas.
Co., 212 S.W.3d 870, 874–75 (Tex. App.—Austin 2006, pet. denied) (op. on reh’g) (holding that sovereign immunity did not bar a
lawsuit seeking a declaration that the department of insurance issued improper
advisories regarding the effect of medical conditions).  A legion of cases explain,
however, that when a plaintiff seeks a declaration with the purpose of
recovering damages from the State, immunity precludes the suit. See IT-Davy, 74 S.W.3d at 855–56 (stating
that classifying a suit as a declaratory judgment action does not “change [the]
suit’s underlying nature” and explaining that “private parties cannot
circumvent the State’s sovereign immunity from suit by characterizing a suit
for money damages . . . as a declaratory-judgment claim”); City of Dallas v. Blanton, 200 S.W.3d 266, 280 (Tex. App.—Dallas
2006, no pet.) (rendering a judgment of dismissal because
the plaintiff’s declaratory judgment claim, which concerned the construction of
a Dallas city code section, sought to impose liability for damages); Nueces Cnty. v.
Ferguson, 97 S.W.3d 205, 218, 220–24 (Tex. App.—Corpus Christi 2002, no
pet.) (dismissing a suit for damages because the “supreme court has been
adamant . . . that where a party brings a suit ostensibly to determine or
protect rights but actually seeks
monetary damages, sovereign immunity bars such a suit”); City of San Benito v. Ebarb,
88 S.W.3d 711, 721–24 (Tex. App.—Corpus Christi 2002,
pet. denied) (citing and relying on several other cases in which courts held
that a declaratory judgment action could not be used as a backdoor avenue to
collect damages); see also Town of Double
Oak v. McDaniel, No. 02-09-00046-CV, 2009 WL 2579613, at *3 (Tex. App.—Fort
Worth Aug. 20, 2009, no pet.) (mem.
op.) (holding that a declaratory judgment action
concerning the construction of ordinances was barred by immunity because the
declaration sought the refund of alleged overcharges).

          The City argues that the
trial court’s summary judgment order “grants only declaratory relief” and
contends that all “claims that could have been construed as attempts to require
UNT to pay damages were dismissed.”  But although
the trial court’s declaration does not expressly mention money owed by UNT to
the City, the purpose and effect of the declaration is for UNT to pay the 20%
of the City’s electric bills that UNT has withheld since September 2007.  This fact is made obvious by the parties’
settlement agreement, which requires UNT to pay more than $1,071,245.49 to the
City if we (or the Texas Supreme Court) were to uphold the trial court’s
declaration that section 36.351’s discount has expired.

          The agreement also states
that if UNT does not abide by the settlement, “all applicable statutes of
limitation . . . will be tolled as to the reassertion by [the City] of the
claims . . . it has agreed to dismiss, and such claims may be reasserted as if
they had never been dismissed.”  Thus,
the City preserved its ability to use the trial court’s declaration during potential
litigation of the breach of contract or prompt payment claims that it nonsuited.  The
City’s suggestion that it will not use the declaration to compel UNT’s payment
of money is unfounded; sovereign immunity may not be waived by agreements used to
minimize the underlying relief sought.  See IT-Davy,
74 S.W.3d at 855–56; Smith v. Abbott,
311 S.W.3d 62, 80 (Tex. App.—Austin 2010, pet. denied) (op. on reh’g) (“[S]overeign immunity
will bar an otherwise proper UDJA claim that has the effect of establishing a
right to relief against the State for which sovereign immunity has not been
waived.”); Newman v. Kock,
274 S.W.3d 697, 702 (Tex. App.—San Antonio 2008, no
pet.) (“A plaintiff cannot circumvent sovereign immunity by characterizing his
suit as a declaratory judgment action for which immunity is waived when the
plaintiff seeks relief for which sovereign immunity has not been waived.”).

          Both parties rely on City of El Paso v. Heinrich for their
opposing arguments regarding sovereign immunity.  284 S.W.3d 366 (Tex. 2009).  In Heinrich,
a police employee’s widow had received monthly survivor benefits based on a
pension her husband had earned.  Id. at 369.  When the board of trustees of the pension
fund reduced Heinrich’s payment, she filed a lawsuit against the City of El
Paso (among other parties) seeking declaratory relief and an injunction.  Id.  The city pled immunity from suit, but the
trial court denied the plea, and the court of appeals affirmed.  Id.

          Before the supreme
court, the city contended that “although Heinrich request[ed]
declaratory and equitable relief, her claim [was] essentially for past and
future money damages, and that governmental immunity therefore bar[red] her suit.”  Id. 
Heinrich argued that because her claim alleged a reduction in benefits
that was legally unauthorized, it was not barred.  Id. at 370.  The supreme court rejected Heinrich’s contention, stating that
the UDJA 

is a remedial statute designed “to settle and to
afford relief from uncertainty and insecurity with respect to rights, status,
and other legal relations.” . . .  The
Act, however, does not enlarge a trial court’s jurisdiction, and a litigant’s
request for declaratory relief does not alter a suit’s underlying nature.  It is well settled that “private parties
cannot circumvent the State’s sovereign immunity from suit by characterizing a
suit for money damages . . . as a declaratory-judgment claim.” . . .

          . . . .

          . . . 
[W]hile suits for contract damages against the
state are generally barred by immunity, where a statute or the constitution
requires that government contracts be made or performed in a certain way,
leaving no room for discretion, a suit alleging a government official’s
violation of that law is not barred, even though it necessarily involves a
contract. . . .

          . . . .

          . . . 
In other words, where statutory or constitutional provisions create an
entitlement to payment, suits seeking to require state officers to comply with
the law are not barred by immunity merely because they compel the state to make
those payments. . . .

          From this rationale, it is clear that
suits to require state officials to comply with statutory or constitutional
provisions are not prohibited by sovereign immunity, even if a declaration to
that effect compels the payment of money.  To fall within this ultra vires exception, a suit must not complain
of a government officer’s exercise of discretion, but rather must allege, and
ultimately prove, that the officer acted without legal authority or failed to
perform a purely ministerial act. . . .

          . . . .

          Nonetheless, as a technical matter,
the governmental entities themselves—as opposed to their officers in their
official capacity—remain immune from suit. . . .  [B]ecause the rule
that ultra vires
suits are not “suit[s] against the State within the rule of immunity of the
State from suit” derives from the premise that the “acts of officials which are
not lawfully authorized are not acts of the State,”  . . . , it follows that these suits cannot be
brought against the state, which retains immunity, but must be brought against
the state actors in their official capacity.  This is true even though the suit is, for all
practical purposes, against the state. . . .

          . . . .

          . . . 
[A] claimant who successfully proves an ultra vires
claim is entitled to prospective injunctive relief, as measured from the date
of injunction.

Id. at 370–76 (citations and footnotes omitted).

          Here, the City has sued
only UNT, not any of UNT’s officials, and the City concedes that it has not
brought an ultra vires claim.[12]  Instead, the City relies on a footnote in Heinrich to contend that the UDJA waives
UNT’s sovereign immunity in this suit.  During
the supreme court’s discussion about the “Proper
Parties” (as opposed to the “Permissible Relief”) in a declaratory judgment
suit, the court stated,

          For claims challenging the validity of
ordinances or statutes, however, the Declaratory Judgment Act requires that the
relevant governmental entities be made parties, and thereby waives immunity.  Tex. Civ. Prac. & Rem. Code § 37.006(b) (“In any
proceeding that involves the validity of a municipal ordinance or franchise,
the municipality must be made a party and is entitled to be heard, and if the
statute, ordinance, or franchise is alleged to be unconstitutional, the
attorney general of the state must also be served with a copy of the proceeding
and is entitled to be heard.”); see
Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 697–698 (Tex. 2003)
(“[I]f the Legislature requires that the State be joined in a lawsuit for which
immunity would otherwise attach, the Legislature has intentionally waived the
State’s sovereign immunity.”); Tex. Educ.
Agency v. Leeper, 893 S.W.2d
432, 446 (Tex. 1994) (“The DJA expressly provides that persons may challenge
ordinances or statutes, and that governmental entities must be joined or
notified.  Governmental entities joined
as parties may be bound by a court’s declaration on their ordinances or
statutes.  The Act thus contemplates that
governmental entities may be—indeed, must be—joined in suits to construe their
legislative pronouncements.”).  Here,
Heinrich is not challenging the validity of the bylaws or the governing statute,
but rather petitioners’ actions under them.

Id. at 373 n.6; see also Tex.
Lottery Comm’n v. First State Bank of DeQueen, 325 S.W.3d 628,
633–35 (Tex. 2010) (relying on footnote six of Heinrich to hold that the Texas Lottery Commission did not have
immunity from a suit that challenged the validity of a statutory prize-assignment
restriction that conflicted with another statute).[13]

          The City argues that
because this case involves the validity of its own ordinances that deleted the
20% discount and the construction of statutes that affect whether the 20%
discount applies, the “present case fits precisely the exception recognized by
footnote 6 to the Heinrich
opinion.”  But the supreme
court’s holdings in cases before Heinrich
preclude the City’s contention that the rationale of the Heinrich footnote applies to cases in which the underlying purpose
of the suit is to impose financial liability. 
For example, although the Heinrich
court (and the Dequeen
court) relied on Leeper
to conclude that immunity of governmental parties is waived (in some
circumstances) when they must be joined to a suit that seeks to construe or
challenge a statute, the IT-Davy
court, when discussing that exception from Leeper, stated,

          IT-Davy misplaces its reliance on Leeper.  In Leeper, home-school parents and curriculum providers brought
a class-action suit against state officials, challenging the Texas Education
Agency’s construction of the compulsory school-attendance law.  They sought a declaration that the compulsory
attendance law’s private-school exemption includes home-schooled children, and
therefore, the home-school parents could not be prosecuted for keeping their
children home.  We determined that the
DJA expressly allows persons to challenge ordinances or statutes.  Moreover, the DJA requires challengers to
join governmental entities in suits to construe legislative pronouncements, and
the DJA authorizes awarding attorneys’ fees.  Accordingly, we held that the DJA necessarily
waives governmental immunity for attorneys’ fees in suits to construe
legislative pronouncements. 

          However, Leeper’s limited waiver does not allow
private parties to sue the State for money damages under the DJA.

IT-Davy, 74 S.W.3d at 859–60 (citations omitted) (emphasis
added).

          Similarly, just two
years before deciding Heinrich, the supreme court reiterated IT-Davy’s
holding that statutory challenges in declaratory judgment claims do not always
waive the government’s immunity.  See City of Houston v. Williams,
216 S.W.3d 827, 829 (Tex. 2007). 
In Williams, a group of
firefighters sued the city to recover amounts deducted from payments they
received upon termination of their employment. 
Id. at 828.  Although the firefighters’ claim for
declaratory relief concerned a “legitimate question of statutory interpretation,”
the supreme court held that “in every suit against a
governmental entity for money damages, a court must first determine the parties’
contract or statutory rights; if the sole purpose of such a declaration is to
obtain a money judgment, immunity is not waived.”  Id. at 829.

          Various courts of
appeals have likewise recognized that the sovereign immunity waiver discussed
in Leeper and
footnote six of Heinrich does not
apply when the underlying basis of the claim is to impose financial liability.  See Gatesco Q.M., Ltd. v. City of
Houston, No. 14-09-00176-CV, 2010 WL 4262061, at *7 (Tex. App.—Houston
[14th Dist.] Oct. 28, 2010, no pet.) (citing Leeper, Heinrich, and DeQueen, but then explaining that
if a litigant seeks an otherwise proper declaratory judgment “construing or
invalidating a statute, this claim is
nonetheless barred by governmental immunity if the declaration sought would
have the effect of establishing a right to relief against the governmental
entity for which governmental immunity has not been waived”) (emphasis added); Creedmoor-Maha Water Supply Corp., 307 S.W.3d at 515; State v. BP Am. Prod. Co., 290 S.W.3d
345, 360 (Tex. App.—Austin 2009, pet. filed); Ebarb, 88 S.W.3d
at 721 (“While the UDJA allows private parties to challenge ordinances or
statutes, it does not authorize them to sue the State for money damages.”).

          We note that the City
has not argued that the settlement agreement independently waives UNT’s
immunity.  During oral argument, the
City’s attorney opined that the settlement agreement does not affect UNT’s
immunity because “only the legislature can waive sovereign immunity.”  A settlement agreement is a contract.  Doe v.
Tex. Ass’n of Sch. Bds., Inc., 283 S.W.3d 451,
458 (Tex. App.—Fort Worth 2009, pet. denied). 
The supreme court has held that a governmental
entity does not waive immunity from suit merely by entering into a contract or
accepting benefits of the contract.  Tex. A & M
Univ.-Kingsville v. Lawson, 87 S.W.3d 518, 520
(Tex. 2002) (plurality op.); Gen. Servs.
Comm’n v. Little-Tex Insulation Co., 39 S.W.3d
591, 594 (Tex. 2001) (“[T]he State does not waive immunity from suit simply by
contracting with a private person. . . . 
Legislative consent to sue is still necessary.”).

          In Lawson, the supreme court held that when a
governmental entity settles a claim from which the entity did not have
immunity, the entity likewise does not have immunity for a breach of the
settlement agreement.  Lawson, 87 S.W.3d at 521.  We conclude that Lawson implies, therefore, that an entity’s immunity is not waived when a governmental entity
settles a claim from which the entity has
immunity (otherwise, the supreme court could have
streamlined its opinion by holding that settlement agreements always waive
immunity).

          In an apparent effort to
avoid the strictures of sovereign immunity, the parties’ settlement agreement
essentially traded the dismissal of the City’s prompt payment and breach of
contract claims, which were centered on imposing financial liability on the
State, for a guarantee that the State would nonetheless pay the money requested
by those claims if it failed to overturn the trial court’s declaratory judgment
(which does not facially award damages) on appeal.[14]  While we normally encourage parties to settle
their disagreements whenever possible, we are constrained by our supreme
court’s precedent.  We are therefore
compelled to hold that the parties in this case could not avoid sovereign
immunity by their contract, and therefore alter a court’s subject matter
jurisdiction, in that fashion.[15]  See Dubai
Petroleum Co. v. Kazi, 12 S.W.3d
71, 76 (Tex. 2000) (explaining that subject matter jurisdiction “cannot be
conferred upon any court by consent or waiver”) (quoting Fed. Underwriters Exch. v. Pugh, 141 Tex. 539, 541, 174 S.W.2d 598, 600 (1943)); Russ
Berrie & Co. v. Gantt, 998 S.W.2d 713, 715 (Tex. App.—El Paso 1999, no pet.)
(“[T]his is a matter of subject matter jurisdiction and we must determine sua sponte
whether we have the authority to hear this action as framed; the parties cannot
confer jurisdiction by agreement.”). 
This is not a case in which the City’s claim for damages is germane to,
connected with, properly defensive to, and offsetting of a claim for damages by
UNT.[16]  See Reata Constr. Corp., 197 S.W.3d at
373, 376–77.

          For all of these
reasons, we hold that UNT is immune from the City’s UDJA claim because that
claim ultimately imposes damages on the State. 
See McBride, 317 S.W.3d at 732; Ryan,
52 S.W.3d at 428.  UNT’s immunity deprived the trial court
of subject matter jurisdiction.

Conclusion

          Having determined that
the trial court did not have subject matter jurisdiction over the City’s UDJA
claim, and because the jurisdictional defects may not be “incurable” with
respect to the City’s attempt to determine whether section 36.351’s discount
remains effective, we reverse the trial court’s judgment and remand this case
to the trial court to afford the City the opportunity to amend its
pleadings.  See Miranda, 133 S.W.3d at
224, 226–27; Wise Reg’l
Health Sys. v. Brittain, 268 S.W.3d
799, 804 (Tex. App.—Fort Worth 2008, no pet.); see also Heinrich, 284 S.W.3d 372–74, 376–77, 380.

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY
and MEIER, JJ.

 

DELIVERED:  April 14, 2011











          [1]Supporters of the mandated discount believed that it
would help keep the costs of higher education down; opponents argued that
universities “consume electricity equivalent to sizable commercial . . .
operations” and “should not be specifically singled out for a substantial
discount over other institutions.”  House
Comm. on State Affairs, Bill Analysis, Tex. S.B. 373, 74th Leg, R.S. (1995).

 





          [2]Senate Bill 7’s provisions principally amended and
added to the utilities code, although they also amended other codes.  See
Act of May 27, 1999, 76th Leg., R.S., ch. 405, 1999 Tex. Gen. Laws 2543, 2543–2625.





          [3]Section 36.351 is part of Title 2 of the utilities
code.

 





          [4]See Tex. Util. Code Ann. § 11.003(11)
(Vernon 2007).

 





          [5]According
to UNT, because the City has not opted to enter the competitive electric
market, DME is the only service provider available to the university.

 





          [6]The City amended its petition in November 2008 to
add a breach of contract claim.

 





          [7]See Tex. Civ. Prac.
& Rem. Code Ann. §§ 37.001–.011 (Vernon 2008).

 





          [8]See Tex. Gov’t Code Ann. §§ 2251.001–.055
(Vernon 2008).

 





          [9]Section
105.203 states,

 

          The [board
of regents of UNT] may contract with the City of Denton for the furnishing of
water and other utility services to the university.  The rates to be charged the university may
not exceed those regularly established, published, and declared rates for
similar customers.  If there are no
similar customers, the rates to be charged shall be those established by the
City of Denton for commercial users.  The
city may make any adjustments, discounts, and special rates that the governing
authorities of the city may consider appropriate to provide for the university.

Tex. Educ. Code
Ann. § 105.203 (Vernon 2002).





          [10]See Tex. R. Civ. P. 162.

 





          [11]A plaintiff may obtain express legislative
permission to sue a governmental entity in a particular case.  See Tex.
Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999).  Sovereign immunity is also waived
for constitutional takings claims.  Foster v. Denton Indep.
Sch. Dist., 73 S.W.3d 454,
460 (Tex. App.—Fort Worth 2002, no pet.).  The City has not obtained express legislative
permission to bring this suit, and it does not assert a takings claim.





          [12]UNT states that if the City’s “view of the law is correct, UNT’s officials have no discretion to continue to
claim a right to the defunct 20% discount.” 
We do not intend for this opinion to be construed as approving or
precluding an ultra vires suit by the City against
UNT’s officials, nor do we intend for this opinion to comment on what relief
could be available in that suit, if any. 





          [13]Thus, DeQueen did not
concern the State’s liability for damages. 
Neither did Leeper.  We note that there appears to be some tension
between the supreme court’s holding in DeQueen, in which the court held that a statutory challenge
could be brought through the UDJA against the State, and its decision a few
months earlier in Tex. Dep’t of Ins. v. Reconveyance Servs., Inc.,
306 S.W.3d 256, 258 (Tex. 2010), in which the court held that a plaintiff’s
claim regarding the construction of portions of the insurance code must be
brought as an ultra vires suit.





          [14]During oral argument, UNT’s attorney stated, “The
agreement was designed to allow the parties to recoup money from each other
that the court may not have been able to order due to sovereign immunity.”  The City states, “The Settlement Agreement was made for the specific purpose of getting a
clean ruling on the matter at issue unclouded by any sovereign immunity
claims.”

 





          [15]In the parties’ agreement, the payment of money by
the state is expressly conditioned on what the trial court decided on the UDJA
claim and what we would decide on the same claim.  Therefore, our decision on the merits would
either compel the state to pay money or relieve it from doing so.  We recognize
that UNT’s decision to enter into the settlement agreement appears to be
incongruous with its sovereign immunity argument on appeal.  The supreme court,
however, has expressed that parties may not typically waive sovereign immunity
by their conduct because it is the “Legislature’s sole province to waive or
abrogate sovereign immunity.”  IT-Davy, 74 S.W.3d at 857; see Tex.
A & M Univ. Sys. v. Koseoglu,
233 S.W.3d 835, 840 (Tex. 2007) (stating that the supreme court has “consistently rejected” waiver-by-conduct
arguments).

 





          [16]UNT did not file a counterclaim in the trial
court.  The settlement agreement states
that if UNT prevails on appeal, it will receive only a credit on future
electric bills that is equal to 20% of its payment of the City’s bills starting
with the May 2009 bill, plus interest (in other words, UNT will receive a
refund). The agreement also awards attorney’s fees to the winning party, but
attorney’s fees connected to a proper UDJA claim are not barred by sovereign
immunity.  Leeper, 893 S.W.2d at 446; Ebarb, 88 S.W.3d
at 724.